## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

JOYCE CHRISTIE     05    11830 NMG
        Plaintiff,

v.

HARTFORD LIFE GROUP INSURANCE
COMPANY as successor to CNA GROUP
LIFE ASSURANCE COMPANY
        Defendant.

U.S.D.C. Civil Action No._____
Removal from Commonwealth of Mass.
Sup. Ct. Suffolk

MAGISTRATE JUDGE

RECEIPT #_____
AMOUNT $ 250
SUMMONS ISSUED____
LOCAL RULE 4.1____
WAIVER FORM____
MCF ISSUED____
BY DPTY. CLK.____
DATE____ 9|8|05

### NOTICE OF REMOVAL

Defendant, Hartford Life Group Insurance Company as successor to CNA Group Life Assurance Company ("Hartford"), hereby files this Notice of Removal of the above captioned action to the United States District Court for the District of Massachusetts from the Superior Court Department of the Commonwealth of Massachusetts, Suffolk County (Civ. No. 05-3407) where the action is now pending as provided by 28 U.S.C. § 1446 and states:

1. Plaintiff commenced this action against Hartford in the Superior Court of the Commonwealth of Massachusetts, asserting breach of contract and treble damages pursuant to MGL c. 93A, and seeking damages in excess of $75,000.00.

2. As detailed below, this action is removable pursuant to 28 USC § 1441(b) because Hartford is not a citizen of Massachusetts, there is complete diversity and the amount in controversy exceeds $75,000.00.

3. At the time of the commencement of this action in state court, the Plaintiff was, and still is, a citizen of the Commonwealth of Massachusetts. The Defendant, Hartford, was and still is a corporation, incorporated and existing under and by virtue of the laws of the State of Connecticut.

4.  This Court has diversity jurisdiction, pursuant to 28 USC § 1332, over this matter because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and is between citizens of different states.

5.  Copies of all process, pleadings, and orders served upon Hartford are attached hereto at Exhibit A.

6.  Hartford shall provide written notice of the filing of this notice as required by 28 U.S.C. § 1446(d).

7.  A copy of this notice shall be filed with the clerk of the state court as required by 28 U.S.C. § 1446(d).

WHEREFORE, Hartford requests that this action proceed in this Court as an action properly removed to it.

Respectfully Submitted,

Hartford Life Group Insurance Company

David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO# 657280
CREVIER & RYAN, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel: (413) 787-2400
Fax: (413) 781-8235
Email: dcrevier@crevierandryan.com
        kparsons@crevierandryan.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on Plaintiff's counsel by first class U.S. Mail, postage prepaid this 7th day of September 2005.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                            SUPERIOR COURT DEPARTMENT
                                                       CIVIL ACTION NO.: 05-3407

......................................................................................
JOYCE CHRISTIE                              )
                    Plaintiff              )
                                           )
                                           )
v,                                         )
HARTFORD LIFE GROUP INSURANCE              )
COMPANY as successor to CNA GROUP          )
LIFE ASSURANCE COMPANY                     )
                    Defendant              )
...................................................................................... )

**FIRST AMENDED**
**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF WITH JURY DEMAND**

Plaintiff Joyce Christie brings this complaint against defendant Hartford Life Group

Insurance Company as successor to CNA Group Life Assurance Company for violation of the

Massachusetts Consumer Protection Act, G.L. c. 93A, and the Unfair Methods of Competition

and Unfair and Deceptive Acts and Practices in the Business of Insurance Act, G.L. c. 176D.

The Defendant insurer has engaged in unfair or deceptive acts or practices within the meaning of

M.G.L. c. 93A, §§ 2 and 9, and unfair or deceptive acts or practices in the business of insurance

within the meaning of 176D by denying plaintiff's claim, in bad faith, for disability benefits.

Plaintiff seeks damages for breach of contract, violation of G. L. c. 176D and G. L. c. 93A for the

defendant's unfair and deceptive insurance practices, common law bad faith insurance practices,

and injunctive relief precluding the defendant insurer from continuing to violate the terms of the

insurance contract.

1

## PARTIES

1.    The Plaintiff Joyce Christie ("Ms. Christie") is an individual having a ususal place of
      residence at New Bedford, Bristol County, Massachusetts.

2.    The Defendant Hartford Life Group Insurance Company ("The Hartford") is an insurance
      company existing under the laws of the State of Connecticut having a place of business at
      Hartford, Connecticut and is licensed to issue insurance contracts to citizens of the
      Commonwealth of Massachusetts. The Hartford is the successor to CNA Group Life
      Assurance Company.

## JURISDICTION AND VENUE

3.    Personal jurisdiction is predicated against The Hartford as being licensed to provide
      insurance contracts to citizens of the Commonwealth of Massachusetts, including
      Ms. Christie.

4.    Venue is proper in Suffolk County as The Hartford executed and delivered an insurance
      contract with the Commonwealth of Massachusetts Group Insurance Commission that
      has its principle place of business at Boston, Suffolk County, Massachusetts.

## FACTS COMMON TO ALL COUNTS

5.    At all times material hereto, Ms. Christie was employed as an assistant to the housing
      manager by the Fall River Housing Authority. The Fall River Housing Authority is an
      instrumentality of the Commonwealth of Massachusetts.

2

6.  At all times material hereto, Ms. Christie paid premiums for disability coverage provided
    by CNA Group Life Assurance Company and/or The Hartford, pursuant to the terms of an
    insurance contract with the Commonwealth of Massachusetts Group Insurance
    Commission, of which Ms. Christie is an insured or beneficiary.

7.  In or about calender year 2005, The Hartford acquired CNA Group Life Assurance
    Company, including the disability insurance policy covering Ms. Christie.

8.  Ms. Christie obtained the aforementioned insurance contract through her employment
    with the Fall River Housing Authority in conjunction with a benefit plan offered by the
    Commonwealth of Massachusetts under the Group Insurance Commission.

9.  On or about August 20, 2002, the Fall River Housing Authority instructed Ms. Christie
    not return to work, because she was unable to perform the material and substantial duties
    of her occupation as required by her employer, as a result of a physical injury.

10. Ms. Christie's inability to perform, on a continuous basis, the material and substantial
    duties of her occupation, was supported by opinions of treating medical doctors.

11. The material and substantial duties of Ms. Christie's occupation, include but are not
    limited to:

    a.  Working in front of a computer terminal two (2) - four (4) hours per 6
        (six) and one half (½) hour day;

    b.  Being able to lift twenty pounds from waist to waist and floor to waist on a
        frequent basis;

    c.  Being able to climb thirty (30) stairs each day for a total of one (1) hour
        per 6 and ½ hour day;

3

      d.     Being able to work both standing and seated for at least two (2) hours at a

           time; and

      e.     Being able to type fifty (50) words per minute.

12.    Ms. Christie's treating doctors opined that Ms. Christie was unable to continuously

perform the material and substantial duties of her occupation on a regularly and sustained

basis, due to degenerative disc disease compounded by a motor vehicle trauma, and other

health difficulties.

13.    Ms. Christie sought disability benefits from CNA Group Life Assurance Company, the

predecessor to The Hartford.

14.    Despite submitting substantial medical and vocational documentation in support of her

claim for benefits, CNA Group Life Assurance Company, the predecessor to The

Hartford, and The Hartford refused to pay benefits to Ms. Christie for various reasons.

15.    Ms. Christie appealed benefits denials to CNA Group Life Assurance Company, the

predecessor to The Hartford, and to The Hartford on a number of occasions.

16.    Despite these appeals, CNA Group Life Assurance Company, the predecessor to The

Hartford, and The Hartford, continued to deny Ms. Christie's claim for benefits.

## COUNT I

## BREACH OF CONTRACT

17.    Ms. Christie repeats and realleges the allegations set forth in Paragraphs 1 through 16

incorporates the same by reference herein.

4

18. Ms. Christie fulfilled all of her obligations in order to receive disability benefits under the insurance contract with CNA Group Life Assurance Company, the predecessor to The Hartford, and The Hartford.

19. Ms. Christie delivered to both CNA Group Life Assurance Company, the predecessor to The Hartford, and The Hartford, medical and vocational documentation that she was, and is continuously unable to perform the material and substantial duties of her occupation.

20. Both CNA Group Life Assurance Company and The Hartford breached their duties under the insurance contract by refusing to pay benefits to Ms. Christie.

21. As a direct and proximate result of the breach of the insurance contract, both CNA Group Life Assurance Company and The Hartford caused Ms. Christie to suffer damages.

## COUNT II

### VIOLATION OF M.G.L. c. 93A and c. 176D

22. Ms. Christie repeats and realleges the allegations set forth in Paragraphs 1 through 21 and incorporates the same by reference herein.

23. At all times material hereto, CNA Group Life Assurance Company and The Hartford have been engaged in trade or commerce as those terms are defined under G. L. c. 93A.

24. At all times material hereto, CNA Group Life Assurance Company and The Hartford sold to Ms. Christie a contract of insurance as defined under G. L. c. 175.

25. On March 31, 2005, The Hartford received from Ms. Christie's counsel a "Demand Letter" seeking relief under G. L. c. 93A and c. 176D. A copy of the letter and the return receipt card indicating receipt by The Hartford is attached as EXHIBIT A.

26. The Hartford never responded to the Demand Letter.

5

27.    The Hartford, and its predecessor, The CNA Group Life Assurance Company, engaged in

       deceptive acts and practices that violated both G. L. c. 93A and c. 176D, as set out in

       detail in the Demand Letter.

28.    By failing to respond to the Demand Letter, The Hartford engaged in a separate violation

       of both G. L. c. 93A and c. 176D.

29.    The unfair and deceptive acts and practices of both The Hartford, and its predecessor,

       CNA Group Life Assurance Company, were performed willingly and knowingly.

30.    Both The Hartford, and its predecessor, CNA Group Life Assurance Company,

       materially violated G. L. c. 93A and c. 176D but its oppressive acts and ommissions.

31.    As a direct and proximate result of the acts and omissions of both CNA Group Life

       Assurance Company and The Hartford, particularly its refusal to pay benefits to Ms.

       Christie caused her to suffer damages.

## COUNT III

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

32.    Ms. Christie repeats and realleges the allegations set forth in Paragraphs 1

       through 31 and incorporates the same by reference herein.

33.    Both The Hartford, and its predecessor, CNA Group Life Assurance Company, breached

       the covenant of good faith and fair dealing implied in the terms of the insurance contract

       with the Commonwealth of Massachusetts Group Insurance Commission and Ms.

       Christie by failing to pay benefits due to Ms. Christie, and by denying insurance coverage

       to Ms. Christie as reasonably expected by an insured.

6

34.   As a direct and proximate result of acts and omissions of CNA Group Life Assurance

      Company's and The Hartford's refusal to pay benefits to Ms. Christie, Ms. Christie has

      suffered damages.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Joyce Christie, prays for judgment against the Defendant

Hartford Life Group Insurance Company as successor to CNA Group Life Assurance Company,

as follows:

1.    Enter an order and decree requiring the defendant to pay on-going disability benefits to

      the plaintiff until such time that it has a lawful reason to cease paying benefit payments to

      the plaintiff;

2.    Award Damages in an amount which this Court shall determine to be necessary and

      proper to compensate the plaintiff for her injuries together with pre-judgment interest

      from the date of breach of the contract, post-judgment interest, reasonable attorneys' fees

      and costs;

3.    Award treble damages as allowed under G. L. c. 93A and pre-judgment interest from the

      date of breach of the contract, post-judgment interest and costs and reasonable attorneys'

      fees, and all other relief allowed by this statute;

4.    Award punitive damages for violating the covenant of good faith and fair dealing and

      engaging in bad faith insurance practices; and

5.    For such other and further relief as this Court deems just and proper.

7

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

JOYCE CHRISTIE
By her attorneys,


Jonathan M. Feigenbaum, Esq.
B.B.O. # 546686
Stephanie M. Swinford, Esq.
B.B.O. # 654135
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

L:\lchr001\complaint.first amended.wpd

8

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits. *ACIN 001*

1. Article Addressed to:

Appeals - BMS
The HARTFORD
P.O. Box 299
HarTFord, CT 06141-0299

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Gary Bennett_   ☐ Agent   ☐ Addres

B. Received by ( Printed Name ) @ ATY BESSONNCHI  C. Date of Del.

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchand
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)     7004 0750 0000 5529 9285

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1;

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Pa'c
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**PHILLIPS & ANGLEY**
**ONE BOWDOIN SQUARE**
**BOSTON, MASS 02114**

22

# PHILLIPS & ANGLEY

ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(817) 867-8787

TELECOPIER (617) 227-8992

JEFFREY J. PHILLIPS, P.C.
JEFFREY T. ANGLEY, P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
STEPHANIE N SWINFORD
KRISTEN M PLOETZ

*ALSO ADMITTED IN DC AND CA

March 28, 2005
CERTIFIED MAIL
No.7004 0750 0000 5529 9285

Appeals - BMS
The Hartford
P.O Box 299
Hartford, CT 06141-0299

$\bigcup LF \ell/00l$

Re:     Joyce Christie
        Claim No. 2445149111
        Policy No. 83130411
        CNA Policy for Commonwealth of Massachusetts Employees ("Insurance Policy")

Dear Sir or Madam:

I am counsel for Joyce Christie("Ms. Christie" hereinafter) as further identified above.
Upon receipt of this letter, I am requesting that The Hartford either mail or fax to me at 617-227-
8992 confirmation that this letter and the enclosed CD-ROM have been received.

Reference is made to a Commonwealth of Massachusetts long term disability benefits
insurance policy originally issued by CNA. I am aware that Ms. Christie's former attorney,
Deborah Kohl, has corresponded with CNA regarding a claim for benefits, to which CNA
consistently denied the claim. I know that CNA made a mistake in its evaluation of Ms.
Christie's claim, and therefore, I am writing to you to look at this matter again. Since Ms.
Christie is employed by the Commonwealth of Massachusetts, the administration of the
insurance policy is not subject to the Employee Retirement Income Security Act of 1974
("ERISA" hereinafter). Ms. Christie has remedies available to her under Massachusetts General
Laws Chapter 93A and 176D relating to unfair insurance practices. I am requesting that The
Hartford promptly review this matter and begin paying benefits to Ms. Christie retroactive to her
date of disability of August 30, 2002, taking into account the ninety (90) day elimination period

After reviewing CNA's denial letters it appears that CNA did not engage in a fair claims
process. Since CNA sold its long term disability business to The Hartford, there is now an

Appeals - BMS
The Hartford
March 28, 2005
Page 2

opportunity for The Hartford to correct the unfair practices of CNA. Throughout this letter CNA and The Hartford are referred to interchangeably.

I have included a CD-ROM[1] for review with this letter. The CD-ROM contains approximately 525 pages of medical records, vocational information, a job description, workers' compensation records etc., demonstrating that Ms. Christie is disabled under the terms of the applicable insurance policy.

Ms. Christie has been receiving workers' compensation benefits for a significant period of time. As I am sure The Hartford is aware, the workers' compensation provider has tried unsuccessfully to terminate those benefits. As such, the determination of the workers' compensation system is indicative that Ms. Christie is disabled and entitled to benefits under The Hartford insurance policy.

Please consider this letter a demand under Massachusetts General Laws Chapter 93A and 176D relating to unfair insurance practices, permitting Ms. Christie to bring a claim for "bad faith" or "unfair and deceptive" insurance practices in the event that The Hartford refuses to begin paying benefits. Ms. Christie will not be barred under the ERISA preemption from asserting such a claim.

Under Massachusetts law, if payment is otherwise due under an insurance policy, an insurer violates Chapter 93A if it imposes conditions on the payment that are not required under the policy. *See Bertassi v. Allstate Ins. Co.*, 402 Mass. 366, 370-71, 522 N.E.2d 949, 951-52 (1988). For example, in *Bertassi*, the insured had sought under insured motorist coverage under two automobile policies. *Bertassi v. Allstate Ins. Co.*, 402 Mass. at 368, 522 N.E.2d at 951. The insurer acknowledged the insured's right to coverage under the policies but as a condition to payment, it demanded that the insured execute an agreement protecting the insurer's subrogation rights. No policy provision required the insured to execute such an agreement. The Supreme Judicial Court held that the insurer's insistence that the insured sign the agreement violated Chapter 93A. The specific violations are set forth below in this letter.

---

[1]The CD-ROM may be read using Adobe Acrobat Reader, which most computer users have at their disposal or may be obtained free of charge at www.adobe.com. If The Hartford desires a paper copy of the documents on the CD-ROM, then please contact the undersigned, and I will Federal Express paper copies of the documents on the CD-ROM.

Appeals - BMS
The Hartford
March 28, 2005
Page 3

The touchstone of the relationship between the insurer and the insured is honesty and fair dealing. In this instance, CNA did not deal fairly with Ms. Christie. CNA plainly violated a universal insurance doctrine know as the "reasonable expectations of the insured." Ms. Christie paid premiums to CNA in consideration of insurance benefits as set forth in the Insurance Policy. CNA breached its obligations to Ms. Christie as it has engaged in a course of conduct to deny benefits to Ms. Christie even though she is clearly entitled to receipt of benefits. Although, this doctrine has been most discussed by the Courts under California law, it is also well settled under Massachusetts law. *Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280-282, 675 N.E.2d 1161 (1997). "Courts will protect the reasonable expectations of...insureds." *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994). "Where particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the state policy objective." *Henry v. Home Ins. Co.*, 907 F. Supp. 1392, 1397 (C.D. Cal. 1995). The purpose of the "reasonable expectations doctrine" is to protect insured's "objectively reasonable expectations of coverage." *Winters v. Costco*, 49 F.3d 550, 555 (9th Cir. 1995)."Generally, accident policies should be so interpreted that provisions of the policies effectuate the reasonable expectations of the purchaser. An average person buying a personal accident policy assumes he is covered for any fortuitous and undesigned injury." 1A J. Appleman & J. Appleman, Insurance Law and Practice §§ 360 (1981). *Kolb v. The Paul Revere Insurance Companies*, 355 F.3d 1132 (8th Cir. 2004).

Plainly, CNA abrogated Ms. Christie's reasonable expectations arising under the Insurance Policy. Ms. Christie paid premiums to CNA, now The Hartford, because she believed that in the unlikely event she suffered a life altering illness or injury, CNA would honor the terms of her Insurance Policy and pay her monthly benefits. That reasonable expectation of Ms. Christie has been materially breached by CNA. CNA's failure to pay benefits due to her is a violation of law.

## I. BRIEF OCCUPATIONAL BACKGROUND OF MS. CHRISTIE.

Ms. Christie is a fifty plus year old former assistant to the Housing Manager of the Fall River Housing Authority. The actual job description is set forth beginning on page one of the documents on the enclosed CD-ROM. Her duties had a physical component and it is that physical component that she has been unable to do since August 2002. In addition to certain office requirements such as working in front of a computer for a substantial portion of her work day, Ms. Christie was required to climb stairs and to lift from floor to waist and from waist to waist at least 20 lbs. Ms. Christie simply has been unable to do these functions since August 2002.

Appeals - BMS
The Hartford
March 28, 2005
Page 4

## II. MS. CHRISTIE'S INJURIES.

Ms. Christie's work related injuries, and degenerative diseases are well documented in
the enclosed medical records. I urge The Hartford to review those records and the findings of a
number of examining doctors, who concluded that Ms. Christie's ability to engage in the material
duties of her occupation are precluded by the injuries and disease.

## III. THE DEFINITION OF DISABILITY IN THE INSURANCE POLICY.

Under the Insurance Policy, The Hartford is required to pay disability benefits to Ms.
Christie if she is suffering from Disability.

> The Insurance Policy definition for Disability is:
> *Injury or Sickness causes physical or mental impairment to such a degree of*
> *severity that you are: continuously unable to perform the material and*
> *substantial duties of your regular occupation; and not gainfully employed.*

The remainder of the Insurance Policy requires that Ms. Christie be under the regular care
of a doctor. The Hartford cannot reasonably dispute that Ms. Christie has not been under the
continuous care of a medical doctor from August 2002.

"Disability insurance policies generally fall into two classes: occupational insurance,
which provides coverage if the insured is unable to pursue the particular occupation in which he
was previously engaged; and general insurance, which provides coverage only if the insured is
unable to pursue any occupation." *Dawes v. First Unum Life Ins. Co.*, 851 F.Supp. 118, 121-22
(S.D.N.Y.1994); See also, *Scalia v. Travelers Ins. Co.*, 210 So.2d 373, 374-75 (La.Ct.App.1968)
(holding that owner and operator of motor vehicle service station was totally disabled under his
occupational disability policy after back injury left him unable to engage in any physical aspects
of his job, even though he could still perform administrative, record keeping tasks).

Here, the Insurance Policy is an occupational, rather than income replacement policy.
Because occupational disability policies are "designed to indemnify against loss of capacity to
work, not against loss of income..., he may still recover total disability benefits "if such duties do
not constitute a substantial part of the duties normally required of the job." 15 Couch, § 53:70,
at 115." In other words, Ms. Christie need not be bed ridden in order to collect benefits under the
CNA - The Hartford insurance policy. In this case, Ms. Christie is entitled to benefits because
she cannot work in the capacity of her own occupation. Her doctors and others clearly say so.

Appeals - BMS
The Hartford
March 28, 2005
Page 5

### IV. THE VIOLATIONS OF G. L. C. 93A AND 176D.

The Hartford's conduct has been willfully unfair and deceptive in violation of the Massachusetts Consumer Protection Act, G.L.c.93A, §2, §9, and the regulations promulgated thereunder, and made applicable to the insurance practices under G.L.c.176D, §3. The Hartford's and CNA's actions and omissions constitute unfair or deceptive acts or practices in violation of G.L.c.176D as set forth below[2]:

1. 176D §(9)(b): failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policy. This is demonstrated by The Hartford's utter failure to pay any benefits to date despite the overwhelming medical, occupational, and earnings history materials demonstrating that Ms. Christie is entitled to benefits. Since Ms. Christie's debilitating symptoms include pain in her neck and back, it is impossible to provide objective evidence of pain because there is no objective measure of pain. For example, if I held a match to my palm and burnt it to a crisp, I could report that the burn was painful, however, no physician could objectively measure the pain. By its nature, pain is always self-reported. I suggest that the "objective evidence" of debilitating and chronic pain is demonstrated by Ms. Christie's need for prescription medicine to combat the daily pain.

In the ERISA context, there has been a substantial amount of litigation, which has consistently resulted in decisions against insurers. For example, in *Palmer v. University Medical Group*, 994 F. Supp.1221 (D.Ore.1998), the Court found that not all medical conditions are readily susceptible to verification by x-rays or other laboratory tests. Some complaints--such as pain and fatigue--are difficult to objectively measure.... Merely because we cannot see pain or fatigue on an x-ray, or measure it in a laboratory, does not mean that it is not real.... These symptoms may also persist notwithstanding our uncertainty as to the precise etiology. In such cases, diagnostic procedures such as x-rays and lab tests are only one component of the total picture. *Palmer v. Univ. Med. Group*, 994 F.Supp. 1221, 1233 (D.Or.1998). In the ERISA disability context, the First Circuit Court of Appeals has followed this rational, noting in a Chronic Fatigue Syndrome case, that "there is no dipstick test"for Chronic Fatigue Syndrome. *Cook v. Liberty Life*, 320 F.3d 11, 21 (1st Cir. 2003). In other words, pain cannot be objectively determined.

---

[2]The general violations set forth above are stated in greater detail elsewhere in this letter.

Appeals – BMS
The Hartford
March 28, 2005
Page 6

In the SSA context, in *Pollini v. Raytheon Disability Employee Trust*, 54 F.Supp.2d 54, 59 (D.Mass.1999), the Court stated in part:

> Moreover, even though subjective evidence is arguably less dependable than objective evidence, a doctor's assessment of pain is not insignificant medical testimony. For example, in considering whether a person is "disabled" within the meaning of the Social Security Act, the SSA considers pain a significant non-exertional impairment. See *Nguyen v. Chater*, 172 F.3d 31 (1st Cir.1999).

2. 176D §3(9)(d): refusing to pay claims without conducting a reasonable investigation based upon all available information. The same grounds as set forth in 1 above prove this allegation. For example, in CNA's denial letter of April 25, 2003 addressed to Deborah Kohl, CNA provided the most cryptic reasoning for denying benefits. Ms. Christie is unable to determine how CNA could come to its conclusion in rejecting the findings of Ms. Christie's examining and treating doctors.

3. 176D §3(9)(f): failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. The same grounds as set forth in 1 and 2 above support this allegation.

It is impossible to determine if any CNA employee doubted the veracity of the medical conclusions of Ms. Christie's many treating doctors regarding limitations and restrictions imposed and recommended by those doctors and Ms. Christie's report of limitations. In order to deal fairly with Ms. Christie, CNA had an obligation to identify the persons who question her level of impairment and the reasons for such belief. The April 25, 2003 denial letter does not indicate that CNA had any qualified individuals review Ms. Christie's claim file. I suggest that a qualified individual is a person who has the requisite education, training, and experience that would permit that person to testify in Court and to offer an opinion on impairment.

a. CNA's Opinions Of Unqualified Individuals Are Unreliable and Inadmissible.

To date, it appears that no qualified medical person reviewed Ms. Christie's medical records. No medical opinion offered by CNA is sufficiently reliable under the standard announced in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., v. Carmichael*, 526 U.S. 137(1999), and would not qualify as admissible expert evidence in a court action. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse*

Appeals - BMS
The Hartford
March 28, 2005
Page 7

*dixit* of the expert." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*,161 F.3d 77, 81 (1st Cir. 1998). The self serving opinions of CNA are not based on sound medical science and are merely *ipse dixit* opinion that will be unreliable and inadmissible in a Court action. The simple reasoning is that undisclosed persons, who appear not to be qualified to render medical or impairment opinions, have caused The Hartford not to pay benefits.

### i. The Foundation for the Opinions is Not Present.

The standard for evidentiary reliability with regard to the admissibility of expert testimony, as set forth in *Kumho Tire*, discussed *infra*, "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1175 (1999). As the Ninth Circuit indicated in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, following remand by the United States Supreme Court, "it is not enough to just proffer the expert's qualifications, their conclusions, and their assurances of the reliability." *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F. 3rd 1311, 1319 (9th Cir. 1995). Yet, this is precisely what CNA argues.

To infer that restrictions and limitations placed on Ms. Christie by her own medical doctors are wrong, without having reviewed all medical records or even examined Ms. Christie, is unsupportable and will render CNA's medical reviewer's opinions inadmissible. The Supreme Court has explicitly rejected reasoning that an expert's opinion must be accepted because the person claims to be an expert. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997). It is apparent that none of CNA's professionals have conducted any research or testing of any kind. This failure to offer any analysis of how they arrived at their opinions, how their opinions were derived, or how they researched, tested and validated their opinions renders their opinions materially defective. *See, Darcy v. Huster Co.*, 127 F. 3d 649, 652 (8th Cir. 1997) cert denied, 523 U.S. 1004, 118 S. Ct. 1186 (1998) (expert could have but did not test his theory, and thus had no basis for reaching his opinion); *Cummins v. Lyle Industries*, 93 F. 3d 362, 369-371 (7th Cir. 1996)(expert failed to conduct tests or research to substantiate his opinions).

In fact, in the end, there is nothing which suggests that CNA's opinion is supported by a qualified medical expert or person qualified to render an opinion relating to impairment. The unknown employees or consultants with respective medical specialties, if any, are not disclosed. Their experience in diagnosing and treating patients with injuries similar to Ms. Christie is undisclosed, as are their educational and training backgrounds. Ms. Christie should not be left to

Appeals - BMS
The Hartford
March 28, 2005
Page 8

guess at how and why these professionals employed by CNA reached their conclusions. *See,
Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir.1992) (stating that "[t]his sort of disclosure
is consonant with the federal courts' desire to make a trial less a game of blindman's buff and more
a fair contest with the basic issues and facts disclosed to the fullest practical extent").

   ii. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*

   In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States
Supreme Court announced a new test for the admissibility of expert testimony in the Federal
Judiciary. Expert testimony must be not only relevant but rest upon a "reliable foundation." *Id.* at
597. The Supreme Court assigned to the trial judge the gate keeping function of assuring that
scientific expert testimony is admitted in evidence only if it is reliable. *Id.*, "The Court also
discussed certain more specific factors, such as testing, peer review, error rates, and
"acceptability" in the relevant scientific community, some or all of which might prove helpful in
determining the reliability of a particular scientific "theory or technique." *Kumho Tire*, 526 U.S.
137 (1999) (citing the four factors in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. at
593-594). The Supreme Court, in *Daubert*, emphasized that these factors are flexible and not
meant to be all inclusive. Id. at 594.

   iii. *Kumho Tire Co. v. Carmichael*

   In *Kumho Tire*, the *Daubert* gate keeping function was extended to all expert testimony.
*See, Kumho Tire*, 526 U.S. 137 (1999) (*Daubert*'s general holding applies not only to testimony
based upon "scientific knowledge", but also testimony based on "technical" and "other
specialized" knowledge). Thus, a trial court may consider one or more of the *Daubert* factors
when doing so will help determine the reliability of expert testimony, but "*Daubert*'s list of
specific factors neither necessarily or exclusively applies to all experts or in every case." *Kumho
Tire*, 119 S. Ct. at 1171. While the trial judge is granted great latitude in deciding how to test an
expert's reliability, *Daubert* established a standard of evidentiary reliability that "requires a valid .
. . connection to the pertinent inquiry as a pre-condition to admissibility." *Kumho Tire*, 119 S. Ct.
at 1175 (citing *Daubert*, 509 U.S. at 592).

   iv. The *Daubert*-Inspired Analysis of Reliability.

   Reduced to its essence, the *Daubert*-inspired analysis of reliability in the admissibility of
expert testimony asks two questions: Does it work and why? *See*, ENVIRONMENTAL LAW
REPORTER, *New Approaches to Environmental Law and Agency Regulation: The Daubert
Litigation Approach*, 30 ENVTL.L.Rep. 10557, 10562 (July 2000). The questions are more than

Appeals - BMS
The Hartford
March 28, 2005
Page 9

esoteric. The Supreme Court has expressly ruled that "unsupported speculation" and "subjective belief" are not sufficient to be admissible expert evidence. *Daubert*, 509 U.S. at 600. Thus, the trial court's focus "must be solely on principles and methodology of the expert[,]" although it may look to an expert's conclusions in reviewing the reliability of the experts methodology or technique. *Daubert, 509 U.S. at 595; see also, General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997).

### v. Applying the *Daubert*-Inspired Analysis.

In this case, CNA has not disclosed anything of the technique or methodology used to reach its conclusion that Ms. Christie is not entitled to benefits. In fact, all that Ms. Christie is left with is unsupported speculation and the implicit assertion that unidentified CNA employees' opinions are correct and that all of Ms. Christie's physicians are wrong. However, nothing in *Daubert* permits relying on an opinion that is *ipse dixit* of the expert. *See, Kumho Tire*, 119 S.Ct. at 1179 (citing Joiner, 522 U.S. at 146. As the *Daubert* factors are not a definitive checklist or test, numerous additional questions have been proposed that help frame an analysis of the reliability of expert testimony which include the *Daubert* factors. *See, Daubert*, 509 US at 593;[3] *See, Saia v. Sears Roebuck and Co., Inc.*,47 F.Supp.2d 141 (D.Mass.1999) (Rejecting expert's

---

[3] In the ENVIRONMENTAL LAW REPORTER, *New Approaches to Environmental Law and Agency Regulation· The Daubert Litigation Approach*, the analysis is outlined as follows:

Examples of the "Does it work?" question:

(1) Whether the theory or technique can be, and has been, tested empirically; (2) its error rate; (3) the use which has been made of the new technique; (4) the care with which the technique was employed in the case; (5) the soundness and reliability of the process or technique used in generating the evidence; (6) the proffered connection between the scientific research or test result to be presented, and the particular disputed factual issues in the case; (7) the existence and maintenance of standards governing its use; and (8) presence of safeguards in the characteristics of the technique.

Examples of the "Why?" question:

(1) Whether it has been subjected to peer review and publication; (2) the extent to which the technique has been accepted by scientists in the field involved; (3) the availability of other experts to test and evaluate the technique; (4) the reputation of the expert within the scientific community; (5) the strengths of opposing views and the standing of the person who express them; (6) whether the expert is prepared to discuss uncertainties in the techniques used to prepare the evidence and in the conclusions; (7) the expert's qualifications and stature; (8) the existence of specialized literature, (9) analogy to other scientific techniques whose results are admissible; (10) the novelty of the new invention; (11) the extent to which the technique relies on the subjective interpretation of the expert; (12) whether both sides to the controversy have reasonably comparable access to scientific authorities; (13) the clarity and simplicity with which the technique can be described and its results explained; and (14) the nature and breadth of the inference adduced.

Appeals - BMS
The Hartford
March 28, 2005
Page 10

opinion even though proposed expert had testified in many other jurisdictions as to "intangible ·
damages"); *SMS Systems Maintenance Serv. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st
Cir.1999) ("[e]xpert opinions are no better than the data and methodology that undergrid them ...
An expert must vouch for the reliability of the data on which he relies and explain how the
cumulation of that data was consistent with the standards of the profession; expert testimony that
offers only a bare conclusion is insufficient to prove the expert's search.").

Applying the *Daubert* analysis as framed by the questions "Does it work and why" leads to
the inevitable conclusion that CNA's and The Hartford's opinions are unreliable and that Ms.
Christie is entitled to immediate payment of benefits.

### DEMAND IS HEREBY MADE THAT THE HARTFORD INSURANCE COMPANY IMMEDIATELY:

1.  Pay to Ms. Christie benefits forthwith retroactive to 90 days after August 30, 2002;

2.  Commence and continue paying to Ms. Christie all sums due under the Insurance
    Policy of which Ms. Christie is the holder;

3.  Pay to Ms. Christie Massachusetts statutory interest at the rate of twelve percent
    per annum for all overdue benefits;

4   Pay to Ms. Christie attorneys' fees to reimburse for legal fees incurred to
    date; and

5.  Identify by name and the qualifications of all individuals whom CNA
    relies upon to deny benefits to date.

If The Hartford does not comply with this demand or make a reasonable offer to settle and
to compromise all claims within 30 days of receipt of this demand letter, then The Hartford
should be advised that Ms. Christie will commence a civil action against The Hartford seeking all
damages compensable for its unfair and deceptive conduct that violated G. L. c. 93A and G. L. c.
176D and other common law remedies. The Hartford should be advised that failure to timely
respond to a Consumer Demand Letter under G. L. c. 93A is also a violation of the applicable
statute. The Hartford should be advised that if a Court finds that The Hartford wilfully or
knowingly violated G.L. c.93A and the regulations promulgated thereunder, the Court may award
double or treble damages against The Hartford and will award attorneys' fees to Ms. Christie.

I look forward to hearing from you promptly to resolve this matter.

Appeals - BMS
The Hartford
March 28, 2005
Page 11

Thank you for your courtesy and cooperation in this matter.

Very truly yours,

Jonathan M. Feigenbaum

JMF/rtr
Enclosure record - CD-ROM
cc: Joyce Christie - letter only
L:\LITG\acin001\TheHartford.Joyce.L.03.28.05.wpd

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-3407

Joyce Christie _____ , Plaintiff(s)

v.

Hartford Life Group Insurance Company Defendant(s)

## SUMMONS

To the above-named Defendant: Hartford Life Group Insurance Company

You are hereby summoned and required to serve upon Jonathan M. Feigenbaum, Esq. Phillips & Angley

plaintiff's attorney, whose address is One Bowdoin Square, Boston, MA 0211 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Su **Barbara J. Rouse** Esquire, at Boston, the _____ tenth _____ day of _____ August _____ , in the year of our Lord two thousand _and Five_ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court, answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

| CIVIL ACTION COVER SHEET | | The Commonwealth of Massachusetts Superior Court Department County:_____ |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Joyce Christie | Hartford Life Group Insurance Company |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Jonathan M. Feigenbaum, Esquire Phillips & Angley One Bowdoin Square, Boston, MA 02114 Board of Bar Overseers number: 546686 | |

## Origin code and track designation

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Insurance Contract | ( F ) | (X) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses .................................................................$............
   2. Total Doctor expenses ...................................................................$............
   3. Total chiropractic expenses .............................................................$............
   4. Total physical therapy expenses .........................................................$............
      Total other expenses (describe) .........................................................$............
                                                                    Subtotal $............
B. Documented lost wages and compensation to date ............................................$............
C. Documented property damages to date ......................................................$............
D. Reasonably anticipated future medical and hospital expenses .................................$............
E. Reasonably anticipated lost wages ..........................................................$............
F. Other documented items of damages (describe)
                                                                             $............
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                             $............
                                                                    TOTAL $............

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Plaintiff is a beneficiary under the defendant's insurance policy issued under a contract with the Commonwealth of Massachusetts that provides disability insurance coverage                              TOTAL $. 25,000.00. +

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 8/9/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET# **SUCV2005-03407-F**

RE:    **Christie v Hartford Life Group Ins Co**

TO:Jonathan M Feigenbaum, Esquire
Phillips & Angley
1 Bowdoin Square
Boston, MA 02114

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court
Standing Order 1-88. The order requires that the various stages of litigation described
below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 11/07/2005 |
| Response to the complaint filed (also see MRCP 12) | 01/06/2006 |
| All motions under MRCP 12, 19, and 20 filed | 01/06/2006 |
| All motions under MRCP 15 filed | 01/06/2006 |
| All discovery requests and depositions completed | 06/05/2006 |
| All motions under MRCP 56 served and heard | 07/05/2006 |
| Final pre-trial conference held and firm trial date set | 08/04/2006 |
| Case disposed | 10/03/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**.  You will be
notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline
for filing return of service.**
This case is assigned to session F sitting in **CtRm 1006, 3 Pemberton Square, Boston at
Suffolk Superior Court.**

Dated: 08/16/2005                                              Michael Joseph Donovan
                                                                          Clerk of the Courts
                                                        BY: Martin J. Conley/Timothy Walsh
                                                                          Assistant Clerk

Location: CtRm 1006, 3 Pemberton Square, Boston
Telephone: 617-788-8131

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)___Joyce Christie v. Hartford Life Group Insurance Company_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| ☐ | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| ☐ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
| ☑ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| ☐ | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐    NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

    YES ☐    NO ☑

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐    NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☑    NO ☐

    A.    If yes, in which division do all of the non-governmental parties reside?

    Eastern Division ☑    Central Division ☐    Western Division ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐    NO ☑

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    David B. Crevier and Katherine R. Parsons_____

ADDRESS    Crevier & Ryan, LLP., 1500 Main Street, Suite 2020, Springfield, MA 01115-5727_____

TELEPHONE NO.    (413) 787-2400_____

(CategoryForm.wpd - 5/2/05)

JS 44 — (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Joyce Christie

**DEFENDANTS**

Hartford Life Group Insurance Company

**(b)** County of Residence of First Listed Plaintiff    Bristol County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Hartford County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan M. Feigenbaum, Esq., Phillips & Angley, One Bowdin Square, Boston, MA 02114, (617) 367-8787

Attorneys (If Known)

David B. Crevier, Katherine R. Parsons, Crevier & Ryan, LLP, 1500 Main Street, St. 2020, Springfield, MA 01115-5727, (413) 787-2400

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC § 1332

Brief description of cause:
Contact, MGL c. 93A

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE 9/7/05

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____