MASXP-20050325
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

09/14/2005
03:00 PM

## SUCV2005-03407
### Christie v Hartford Life Group Ins Co

| | | Status | Disposed: transfered to other court (dtrans) |
|---|---|---|---|
| **File Date** | 08/09/2005 | | |
| **Status Date** | 09/14/2005 | **Session** | F - Civil F, 3 Pemberton Square, Boston |
| **Origin** | 1 | **Case Type** | A99 - Misc contract |
| **Lead Case** | | **Track** | F |

| **Service** | 11/07/2005 | **Answer** | 01/06/2006 | **Rule12/19/20** | 01/06/2006 |
|---|---|---|---|---|---|
| **Rule 15** | 01/06/2006 | **Discovery** | 06/05/2006 | **Rule 56** | 07/05/2006 |
| **Final PTC** | 08/04/2006 | **Disposition** | 10/03/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Joyce Christie
Active 08/09/2005

**Private Counsel 546686**
Jonathan M Feigenbaum
Phillips & Angley
1 Bowdoin Square
Boston, MA 02114
Phone: 617-367-8787
Fax: 617-227-8992
Active 08/09/2005 Notify

**Defendant**
Hartford Life Group Ins Co
Served: 08/22/2005
Served (answr pending) 08/24/2005

**Private Counsel 557242**
David B Crevier
Crevier & Ryan
1500 Main Street
Suite 2020
Springfield, MA 01115-5532
Phone: 413-787-2400
Fax: 413-781-8235
Active 09/14/2005 Notify

I HEREBY ATTEST AND CERTIFY ON
SEPT. 15, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

**Private Counsel 657280**
Katherine Parsons
1500 Main St
Springfield, MA 01115-5727
Phone: 413-787-2400
Active 09/14/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 08/09/2005 | 1.0 | Complaint & Jury demand |
| 08/09/2005 | | Origin 1, Type A99, Track F. |
| 08/10/2005 | 2.0 | Civil action cover sheet filed |
| 08/12/2005 | 3.0 | Amended complaint of Joyce Christie (Jury demand) all issues |
| 08/24/2005 | 4.0 | SERVICE RETURNED: Hartford Life Group Ins Co(Defendant) (in hand) |
| 09/14/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Deft. |
| | | Hartford Life Group Insurance Company U. S. Dist#(05-11830NMG). |
| 09/14/2005 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

09/14/2005
03:00 PM

*Suffolk  Superior  Civil # 05-340*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JOYCE CHRISTIE    05 ) **11830** NMG
    Plaintiff,    )
        )
v.    )    U.S.D.C. Civil Action No._____
        )    Removal from Commonwealth of Mass.
HARTFORD LIFE GROUP INSURANCE )    Sup. Ct. Suffolk
COMPANY as successor to CNA GROUP )    I hereby certify on ... that the foregoing document is true and correct
LIFE ASSURANCE COMPANY    )    electronic docket in the captioned
    Defendant.    )    electronically filed original filed on. original filed in my office on __
        )    Sarah A. Thornton
        Clerk, U.S. District Court
        District of Massachusetts

**NOTICE OF REMOVAL**

By:_____

Defendant, Hartford Life Group Insurance Company as successor to CNA Group Life

Assurance Company ("Hartford"), hereby files this Notice of Removal of the above captioned

action to the United States District Court for the District of Massachusetts from the Superior

Court Department of the Commonwealth of Massachusetts, Suffolk County (Civ. No. 05-3407)

where the action is now pending as provided by 28 U.S.C. § 1446 and states:

1. Plaintiff commenced this action against Hartford in the Superior Court of the

Commonwealth of Massachusetts, asserting breach of contract and treble damages pursuant to

MGL c. 93A, and seeking damages in excess of $75,000.00.

2. As detailed below, this action is removable pursuant to 28 USC § 1441(b) because

Hartford is not a citizen of Massachusetts, there is complete diversity and the amount in

controversy exceeds $75,000.00.

3. At the time of the commencement of this action in state court, the Plaintiff was, and

still is, a citizen of the Commonwealth of Massachusetts. The Defendant, Hartford, was and still

is a corporation, incorporated and existing under and by virtue of the laws of the State of

Connecticut.

1

4. This Court has diversity jurisdiction, pursuant to 28 USC § 1332, over this matter because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and is between citizens of different states.

5. Copies of all process, pleadings, and orders served upon Hartford are attached hereto at Exhibit A.

6. Hartford shall provide written notice of the filing of this notice as required by 28 U.S.C. § 1446(d).

7. A copy of this notice shall be filed with the clerk of the state court as required by 28 U.S.C. § 1446(d).

WHEREFORE, Hartford requests that this action proceed in this Court as an action properly removed to it.

Respectfully Submitted,

Hartford Life Group Insurance Company

David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO# 657280
CREVIER & RYAN, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel: (413) 787-2400
Fax: (413) 781-8235
Email: dcrevier@crevierandryan.com
        kparsons@crevierandryan.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on Plaintiff's counsel by first class U.S. Mail, postage prepaid this 7th day of September 2005.

**COMMONWEALTH OF MASSACHUSETTS**

SUFFOLK, ss                                        SUPERIOR COURT DEPARTMENT
                                                   CIVIL ACTION NO. 05-3407

```
                                    )
JOYCE CHRISTIE                      )
              Plaintiff,            )
                                    )
v.                                  )
                                    )
HARTFORD LIFE GROUP INSURANCE       )
COMPANY as successor to CNA GROUP   )
LIFE ASSURANCE COMPANY              )
              Defendant.            )
                                    )
```

**NOTICE OF FILING NOTICE OF REMOVAL**

Please take notice that on September 8, 2005, the Defendant, Hartford Life Group

Insurance Company, filed a Notice of Removal of this matter from the Suffolk Superior Court

for the Commonwealth of Massachusetts, (Civ. No. 05-3407), to the U.S. District Court for the

District of Massachusetts. A copy of the Notice is attached hereto, thus effecting removal of the

above-entitled cause to the District Court in accordance with 28 U.S.C. § 1446(d).

                              Respectfully Submitted,

                              Hartford Life Group Insurance Company

                              David B. Crevier, BBO# 557242
                              Katherine R. Parsons, BBO# 657280
                              CREVIER & RYAN, LLP
                              1500 Main Street, Suite 2020
                              Springfield, MA 01115-5727
                              Tel: (413) 787-2400
                              Fax: (413) 781-8235
                              Email: dcrevier@crevierandryan.com
                                     kparsons@crevierandryan.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on Plaintiff's counsel by first class U.S. Mail, postage prepaid this 9th day of September 2005.

Jennifer Smeahy

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT DEPARTMENT
                                               CIVIL ACTION NO.:

...................................................................
JOYCE CHRISTIE                       )
              Plaintiff              )
                                     )
                                     )
v.                                   )
HARTFORD LIFE GROUP INSURANCE        )
COMPANY as successor to CNA GROUP    )
LIFE ASSURANCE COMPANY               )
              Defendant              )
...................................................................)

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF WITH JURY DEMAN

Plaintiff Joyce Christie brings this complaint against defendant Hartford Life Group

Insurance Company as successor to CNA Group Life Assurance Company for violation of the

Massachusetts Consumer Protection Act, G.L. c. 93A, and the Unfair Methods of Competitior

and Unfair and Deceptive Acts and Practices in the Business of Insurance Act, G.L. c. 176D.

The Defendant insurer has engaged in unfair or deceptive acts or practices within the meaning

M.G.L. c. 93A, §§ 2 and 9, and unfair or deceptive acts or practices in the business of insuranc

within the meaning of 176D by denying plaintiff's claim, in bad faith, for disability benefits.

Plaintiff seeks damages for breach of contract, violation of G. L. c. 176D and G. L. c. 93A for

defendant's unfair and deceptive insurance practices, common law bad faith insurance practice

and injunctive relief precluded the defendant insurer from continuing to violate the terms of th

insurance contract.

1

## PARTIES

1.    The Plaintiff Joyce Christie ("Ms. Christie") is an individual having a ususal place of

residence at New Bedford, Bristol County, Massachusetts.

2.    The Defendant Hartford Life Group Insurance Company ("The Hartford") is an insura:

company existing under the laws of the State of Connecticut having a place of busines

Hartford, Connecticut and is licensed to issue insurance contracts to citizens of the

Commonwealth of Massachusetts. The Hartford is the successor to CNA Group Life

Assurance Company.

## JURISDICTION AND VENUE

3.    Personal jurisdiction is predicated against The Hartford as being licensed to provide

insurance contracts to citizens of the Commonwealth of Massachusetts, including

Ms. Christie.

4.    Venue is proper in Suffolk County as The Hartford executed and delivered an insuranc

contract with the Commonwealth of Massachusetts Group Insurance Commission that

has its principle place of business at Boston, Suffolk County, Massachusetts.

## FACTS COMMON TO ALL COUNTS

5.    At all times material hereto, Ms. Christie was employed as an assistant to the housing

manager by the Fall River Housing Authority. The Fall River Housing Authority is an

instrumentality of the Commonwealth of Massachusetts.

2

6.     At all times material hereto, Ms. Christie paid premiums for disability coverage provic
       by CNA Group Life Assurance Company and/or The Hartford, pursuant to the terms o
       insurance contract with the Commonwealth of Massachusetts Group Insurance
       Commission, of which Ms. Christie is a beneficiary.

7.     In or about calender year 2005, The Hartford acquired CNA Group Life Assurance
       Company, including the disability insurance policy covering Ms. Christie.

8.     Ms. Christie obtained the aforementioned insurance contract through her employment
       with the Fall River Housing Authority in conjunction with a benefit plan offered by the
       Commonwealth of Massachusetts under the Group Insurance Commission.

9.     On or about August 20, 2002, the Fall River Housing Authority instructed Ms. Christic
       not return to work, because she was unable to perform the material and substantial duti
       of her occupation as required by her employer, as a result of a physical injury.

10.    Ms. Christie's inability to perform, on a continuous basis, the material and substantial
       duties of her occupation, was supported by opinions of treating medical doctors.

11.    The material and substantial duties of Ms. Christie's occupation, include but are not
       limited to:

       a.     Working in front of a computer terminal two (2) - four (4)hours per 6 ai
              ½ hour day;

       b.     Being able to lift twenty pounds from waist to waist and floor to waist c
              frequent basis;

       c.     Being able to climb thirty (30) stairs each day for a total of one (1) hour
              per 6 and ½ hour day;

3

    d.      Being able to work both standing and seated for at least two (2) hours a time; and

    e.      Being able to type fifty (50) words per minute.

12.    Ms. Christie's treating doctors opined that Ms. Christie was unable to continuously perform the material and substantial duties of her occupation on a regularly and sustair basis, due to degenerative disc disease compounded by a motor vehicle trauma.

13.    Ms. Christie sought disability benefits from CNA Group Life Assurance Company, the predecessor to The Hartford.

14.    Despite submitting substantial medical and vocational documentation in support of her claim for benefits, CNA Group Life Assurance Company, the predecessor to The Hartford, and The Hartford refused to pay benefits to Ms. Christie for various reasons.

15.    Ms. Christie appealed benefits denials to CNA Group Life Assurance Company, the predecessor to The Hartford, and to The Hartford on a number of occasions.

16.    CNA Group Life Assurance Company, the predecessor to The Hartford, and The Hartford, continued to deny Ms. Christie's claim for benefits.

## COUNT I

## BREACH OF CONTRACT

17.    Ms. Christie  repeats and realleges the allegations set forth in Paragraphs 1 through 15 incorporates the same by reference herein.

4

18.   Ms. Christie fulfilled all of her obligations under the insurance contract with the
      Commonwealth of Massachusetts Group Insurance Commission, of which Ms. Christi    ;
      a beneficiary, and under which CNA Group Life Assurance Company, the predecessoɪ
      The Hartford, and The Hartford agreed to provide benefits to Ms. Christie.

19.   Ms. Christie provided medical support that she was and is continuously unable to perfɪ    ɪ
      the material and substantial duties of her occupation.

20.   Both CNA Group Life Assurance Company and The Hartford breached their duties un
      the insurance contract by refusing to pay benefits to Ms. Christie.

21.   As a direct and proximate result of the breach of the insurance contract, both CNA Grɪ
      Life Assurance Company and The Hartford has caused Ms. Christie to suffer damages.

### COUNT II

### VIOLATION OF M.G.L. c. 93A and c. 176D

22.   Ms. Christie repeats and realleges the allegations set forth in Paragraphs 1
through 21 and incorporates the same by reference herein.

23.   At all times material hereto, CNA Group Life Assurance Company and The Hartford
      have been engaged in trade or commerce as those terms are defined under G. L. c. 93A

24.   At all times material hereto, CNA Group Life Assurance Company and The Hartford sɪ
      to Ms. Christie a contract of insurance as defined under G. L. c. 175.

25.   On March 31, 2005, The Hartford received from Ms. Christie's counsel a "Demand
      Letter" seeking relief under G. L. c. 93A and c. 176D. A copy of the letter and the retu
      receipt card indicating receipt by The Hartford is attached as EXHIBIT A.

26.   The Hartford never responded to the Demand Letter.

5

27.     The Hartford, and its predecessor, The CNA Group Life Assurance Company, engage    ı

        deceptive acts and practices that violated both G. L. c. 93A and c. 176D, as set out in

        detail in the Demand Letter.

28.     By failing to respond to the Demand Letter, The Hartford engaged in a separate violat

        of both G. L. c. 93A and c. 176D.

29.     The unfair and deceptive acts and practices of both The Hartford, and its predecessor,    ∍

        CNA Group Life Assurance Company, were performed willingly and knowingly.

30.     As a direct and proximate result of the acts and omissions of both CNA Group Life

        Assurance Company and The Hartford, particularly its refusal to pay benefits to Ms.

        Christie, has caused her to suffer damages.

## COUNT III

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

31.     Ms. Christie repeats and realleges the allegations set forth in Paragraphs 1

        through 30 and incorporates the same by reference herein.

32.     Both The Hartford, and its predecessor, CNA Group Life Assurance Company, breach

        the covenant of good faith and fair dealing implied in the terms of the an insurance

        contract with the Commonwealth of Massachusetts Group Insurance Commission, of

        which Ms. Christie is a beneficiary, and with its contract with Ms. Christie.

33.     As a direct and proximate result of acts and omissions of CNA Group Life Assurance

        Company's and The Hartford's refusal to pay benefits to Ms. Christie, Ms. Christie ha

        suffered damages.

6

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Joyce Christie, prays for judgment against the Defendant Hartford Life Group Insurance Company as successor to CNA Group Life Assurance Compan as follows:

1.   Enter an order and decree requiring the defendant to pay on-going disability benefits to the plaintiff until such time that it has a lawful reason to cease benefit payments to the plaintiff;

2.   Damages in an amount which this Court shall determine to be necessary and proper to compensate the plaintiff for her injuries together with pre-judgment interest from the d of breach of the contract, post-judgment interest, reasonable attorneys' fees and costs;

3.   Treble damages as allowed under G. L. c. 93A including with pre-judgment interest fro the date of breach of the contract, post-judgment interest and costs and reasonable attorneys' fees;

4.   Punitive damages for violating the covenant of good faith and fair dealing and engagin in bad faith insurance practices; and

5.   For such other and further relief as this Court seems just and proper.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

JOYCE CHRISTIE
By her attorneys,

Jonathan M. Feigenbaum, Esq.
B.B.O. # 546686
Stephanie M. Swinford, Esq.
B.B.O. # 654135
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

L:\Jchr001\complaint.2.wpd

I HEREBY ATTEST AND CERTIFY ON

SEPT. 15, 2004, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

8

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  □ Agent
                            □ Addre

B. Received by ( Printed Nan     C. Date of Deli

AC IN 001

1. Article Addressed to:

Appeals - BMS
The HARTFord
P.O. Box 299
Hartford, CT 06141-0299

D. Is delivery address different
If YES, enter delivery addr

EY

Item 1?
elow:      □ No

3. Service Type
□ Certified Mail    □ Expr
□ Registered        □ Retu
□ Insured Mail      □ C.O.

Mail
oceipt for Merchand.

4. Restricted Delivery? (Extra F        □ Yes

2. Article Number
(Transfer from service label)

7004 0750 0000 5525     285

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-15

UNITED STATES POSTAL SERVICE

‖‖‖‖

t-Class Mail
tage & Fees Paid
ʹS
mit No. G-10

• Sender: Please print your name, address, and ZIP+4 in    ; box •

PHILLIPS & ANGLEY
ONE BOWDOIN SQUARE
BOSTON, MASS 02114

22

**COMPLETE THIS SECTION** | **COMPLETE THIS SECTION** **DELIVERY**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits. *ACIN 001*

A. Signature

X [signature] ☐ Agent
☐ Addre

B. Received by (Printed Name) Gary Bisson | C. Date of Deli

D. Is delivery address different item 1? ☐
If YES, enter delivery addre below: ☐ No

1. Article Addressed to:

Appeals-BMS
The Hartford
P.O. Box 299
Hartford, CT 06141-0299

3. Service Type
☐ Certified Mail ☐ Expr
☐ Registered ☐ Retu
☐ Insured Mail ☐ C.O.

Mail
ceipt for Merchand

4. Restricted Delivery? (Extra F ☐ Yes

2. Article Number
*(Transfer from service label)*    7004 0750 0000 5529 285

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1!

PHILLIPS & ANGLEY
ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(617) 367-8787

JEFFREY J. PHILLIPS, P.C.
JEFFREY T. ANGLEY, P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
STEPHANIE M. SWINFORD
KRISTEN M. PLOETZ

*ALSO ADMITTED IN DC AND CA

TELECOPIER (617) 22;    92

March 28, 2005
**CERTIFIED MAIL**
**No.7004 0750 0000 5529 9285**

Appeals - BMS
The Hartford
P.O. Box 299
Hartford, CT 06141-0299

⌐ LF ℓ ᑐᑐ|

Re:    Joyce Christie
       Claim No. 2445149111
       Policy No. 83130411
       CNA Policy for Commonwealth of Massachusetts Employees ("Insurance Policy")

Dear Sir or Madam:

I am counsel for Joyce Christie("Ms. Christie" hereinafter) as further identified abov
Upon receipt of this letter, I am requesting that The Hartford either mail or fax to me at 617-    7-
8992 confirmation that this letter and the enclosed CD-ROM have been received.

Reference is made to a Commonwealth of Massachusetts long term disability benefi
insurance policy originally issued by CNA. I am aware that Ms. Christie's former attorney,
Deborah Kohl, has corresponded with CNA regarding a claim for benefits, to which CNA
consistently denied the claim. I know that CNA made a mistake in its evaluation of Ms.
Christie's claim, and therefore, I am writing to you to look at this matter again. Since Ms.
Christie is employed by the Commonwealth of Massachusetts, the administration of the
insurance policy is not subject to the Employee Retirement Income Security Act of 1974
("ERISA" hereinafter). Ms. Christie has remedies available to her under Massachusetts Gei    ıl
Laws Chapter 93A and 176D relating to unfair insurance practices. I am requesting that The
Hartford promptly review this matter and begin paying benefits to Ms. Christie retroactive    er
date of disability of August 30, 2002, taking into account the ninety (90) day elimination pe    d.

After reviewing CNA's denial letters it appears that CNA did not engage in a fair cl    1s
process. Since CNA sold its long term disability business to The Hartford, there is now an

Appeals - BMS
The Hartford
March 28, 2005
Page 2

opportunity for The Hartford to correct the unfair practices of CNA. Throughout this letter C and The Hartford are referred to interchangeably.

I have included a CD-ROM[1] for review with this letter. The CD-ROM contains approximately 525 pages of medical records, vocational information, a job description, work compensation records etc., demonstrating that Ms. Christie is disabled under the terms of the applicable insurance policy.

Ms. Christie has been receiving workers' compensation benefits for a significant peri of time. As I am sure The Hartford is aware, the workers' compensation provider has tried unsuccessfully to terminate those benefits. As such, the determination of the workers' compensation system is indicative that Ms. Christie is disabled and entitled to benefits under ie Hartford insurance policy.

Please consider this letter a demand under Massachusetts General Laws Chapter 93A d 176D relating to unfair insurance practices, permitting Ms. Christie to bring a claim for "bac faith" or "unfair and deceptive" insurance practices in the event that The Hartford refuses to begin paying benefits. Ms. Christie will not be barred under the ERISA preemption from asserting such a claim.

Under Massachusetts law, if payment is otherwise due under an insurance policy, ar insurer violates Chapter 93A if it imposes conditions on the payment that are not required u r the policy. *See Bertassi v. Allstate Ins. Co.*, 402 Mass. 366, 370-71, 522 N.E.2d 949, 951-52 (1988). For example, in *Bertassi*, the insured had sought under insured motorist coverage u :r two automobile policies. *Bertassi v. Allstate Ins. Co.*, 402 Mass. at 368, 522 N.E.2d at 951. ε insurer acknowledged the insured's right to coverage under the policies but as a condition tc payment, it demanded that the insured execute an agreement protecting the insurer's subrog n rights. No policy provision required the insured to execute such an agreement. The Suprem Judicial Court held that the insurer's insistence that the insured sign the agreement violated Chapter 93A. The specific violations are set forth below in this letter.

---

[1]The CD-ROM may be read using Adobe Acrobat Reader, which most computer us have at their disposal or may be obtained free of charge at www.adobe.com. If The Hartfor desires a paper copy of the documents on the CD-ROM, then please contact the undersigne ind I will Federal Express paper copies of the documents on the CD-ROM.

Appeals - BMS
The Hartford
March 28, 2005
Page 3

The touchstone of the relationship between the insurer and the insured is honesty and
dealing. In this instance, CNA did not deal fairly with Ms. Christie. CNA plainly violated a
universal insurance doctrine know as the "reasonable expectations of the insured." Ms. Chris
paid premiums to CNA in consideration of insurance benefits as set forth in the Insurance Po
CNA breached its obligations to Ms. Christie as it has engaged in a course of conduct to den
benefits to Ms. Christie even though she is clearly entitled to receipt of benefits. Although, tl
doctrine has been most discussed by the Courts under California law, it is also well settled ui
Massachusetts law. *Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 280-
675 N.E.2d 1161 (1997). "Courts will protect the reasonable expectations of...insureds."
*Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 387 (9th Cir. 1994). "Where parti
provisions, if read literally, would largely nullify the insurance, they will be severely restrict
as to enable fair fulfillment of the state policy objective." *Henry v. Home Ins. Co.,* 907 F. Su
1392, 1397 (C.D. Cal. 1995). The purpose of the "reasonable expectations doctrine" is to pr
insured's "objectively reasonable expectations of coverage." *Winters v. Costco,* 49 F.3d 550
(9th Cir. 1995)."Generally, accident policies should be so interpreted that provisions of the
policies effectuate the reasonable expectations of the purchaser. An average person buying a
personal accident policy assumes he is covered for any fortuitous and undesigned injury." 1,
Appleman & J. Appleman, Insurance Law and Practice §§ 360 (1981). *Kolb v. The Paul Rev*
*Insurance Companies,* 355 F.3d 1132 (8th Cir. 2004).

Plainly, CNA abrogated Ms. Christie's reasonable expectations arising under the
Insurance Policy. Ms. Christie paid premiums to CNA, now The Hartford, because she beli     d
that in the unlikely event she suffered a life altering illness or injury, CNA would honor the     ns
of her Insurance Policy and pay her monthly benefits. That reasonable expectation of Ms.
Christie has been materially breached by CNA. CNA's failure to pay benefits due to her is a
violation of law.

## I. BRIEF OCCUPATIONAL BACKGROUND OF MS. CHRISTIE.

Ms. Christie is a fifty plus year old former assistant to the Housing Manager of the I
River Housing Authority. The actual job description is set forth beginning on page one of tl
documents on the enclosed CD-ROM. Her duties had a physical component and it is that
physical component that she has been unable to do since August 2002. In addition to certaii
office requirements such as working in front of a computer for a substantial portion of her \     k
day, Ms. Christie was required to climb stairs and to lift from floor to waist and from waist
waist at least 20 lbs. Ms. Christie simply has been unable to do these functions since Augu
2002.

Appeals - BMS
The Hartford
March 28, 2005
Page 4

## II. MS. CHRISTIE'S INJURIES.

Ms. Christie's work related injuries, and degenerative diseases are well documented ir
the enclosed medical records. I urge The Hartford to review those records and the findings of
number of examining doctors, who concluded that Ms. Christie's ability to engage in the mate   l
duties of her occupation are precluded by the injuries and disease.

## III. THE DEFINITION OF DISABILITY IN THE INSURANCE POLICY.

Under the Insurance Policy, The Hartford is required to pay disability benefits to Ms.
Christie if she is suffering from Disability.

The Insurance Policy definition for Disability is:
*Injury or Sickness causes physical or mental impairment to such a degree of
severity that you are: continuously unable to perform the material and
substantial duties of your regular occupation; and not gainfully employed.*

The remainder of the Insurance Policy requires that Ms. Christie be under the regular   ǝ
of a doctor. The Hartford cannot reasonably dispute that Ms. Christie has not been under the
continuous care of a medical doctor from August 2002.

"Disability insurance policies generally fall into two classes: occupational insurance,
which provides coverage if the insured is unable to pursue the particular occupation in which
was previously engaged; and general insurance, which provides coverage only if the insured
unable to pursue any occupation." *Dawes v. First Unum Life Ins. Co.,* 851 F.Supp. 118, 121-
(S.D.N.Y.1994); S*ee also, Scalia v. Travelers Ins. Co.,* 210 So.2d 373, 374-75 (La.Ct.App.1ᶜ   )
(holding that owner and operator of motor vehicle service station was totally disabled under l
occupational disability policy after back injury left him unable to engage in any physical aspe
of his job, even though he could still perform administrative, record keeping tasks).

Here, the Insurance Policy is an occupational, rather than income replacement policy.
Because occupational disability policies are "designed to indemnify against loss of capacity t
work, not against loss of income..., he may still recover total disability benefits "if such dutie   o
not constitute a substantial part of the duties normally required of the job." 15 Couch, § 53:
at 115." In other words, Ms. Christie need not be bed ridden in order to collect benefits unde   e
CNA - The Hartford insurance policy. In this case, Ms. Christie is entitled to benefits becau:
she cannot work in the capacity of her own occupation. Her doctors and others clearly say so

## IV. THE VIOLATIONS OF G. L. C. 93A AND 176D.

The Hartford's conduct has been willfully unfair and deceptive in violation of the Massachusetts Consumer Protection Act, G.L.c.93A, §2, §9, and the regulations promulgate thereunder, and made applicable to the insurance practices under G.L.c.176D, §3. The Hartford's and CNA's actions and omissions constitute unfair or deceptive acts or practices violation of G.L.c.176D as set forth below[2]:

1. 176D §(9)(b): failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policy. This is demonstrated The Hartford's utter failure to pay any benefits to date despite the overwhelming medical, occupational, and earnings history materials demonstrating that Ms. Christie is entitled to benefits. Since Ms. Christie's debilitating symptoms include pain in her neck and back, it is impossible to provide objective evidence of pain because there is no objective measure of pz For example, if I held a match to my palm and burnt it to a crisp, I could report that the burn    s painful, however, no physician could objectively measure the pain. By its nature, pain is alw self-reported. I suggest that the "objective evidence" of debilitating and chronic pain is demonstrated by Ms. Christie's need for prescription medicine to combat the daily pain.

In the ERISA context, there has been a substantial amount of litigation, which has consistently resulted in decisions against insurers. For example, in *Palmer v. University Mea   d Group*, 994 F. Supp.1221 (D.Ore.1998), the Court found that not all medical conditions are readily susceptible to verification by x-rays or other laboratory tests. Some complaints--such pain and fatigue--are difficult to objectively measure.... Merely because we cannot see pain ( fatigue on an x-ray, or measure it in a laboratory, does not mean that it is not real.... These symptoms may also persist notwithstanding our uncertainty as to the precise etiology. In suc cases, diagnostic procedures such as x-rays and lab tests are only one component of the total picture. *Palmer v. Univ. Med. Group*, 994 F.Supp. 1221, 1233 (D.Or.1998). In the ERISA disability context, the First Circuit Court of Appeals has followed this rational, noting in a Chronic Fatigue Syndrome case, that "there is no dipstick test"for Chronic Fatigue Syndrom *Cook v. Liberty Life*, 320 F.3d 11, 21 (1st Cir. 2003). In other words, pain cannot be objectiv determined.

---

[2]The general violations set forth above are stated in greater detail elsewhere in this l   r.

Appeals - BMS
The Hartford
March 28, 2005
Page 6

In the SSA context, in *Pollini v. Raytheon Disability Employee Trust*, 54 F.Supp.2d 5
59 (D.Mass.1999), the Court stated in part:

Moreover, even though subjective evidence is arguably less dependable than
objective evidence, a doctor's assessment of pain is not insignificant medical
testimony. For example, in considering whether a person is "disabled" within the
meaning of the Social Security Act, the SSA considers pain a significant non-
exertional impairment. See *Nguyen v. Chater*, 172 F.3d 31 (1st Cir.1999).

2. 176D §3(9)(d): refusing to pay claims without conducting a reasonable investigati
based upon all available information. The same grounds as set forth in 1 above prove this
allegation. For example, in CNA's denial letter of April 25, 2003 addressed to Deborah Kol
CNA provided the most cryptic reasoning for denying benefits. Ms. Christie is unable to
determine how CNA could come to its conclusion in rejecting the findings of Ms. Christie's
examining and treating doctors.

3. 176D §3(9)(f): failing to effectuate prompt, fair and equitable settlements of clair      r
which liability has become reasonably clear. The same grounds as set forth in 1 and 2 above
support this allegation.

It is impossible to determine if any CNA employee doubted the veracity of the medi:
conclusions of Ms. Christie's many treating doctors regarding limitations and restrictions
imposed and recommended by those doctors and Ms. Christie's report of limitations. In ord      .c
deal fairly with Ms. Christie, CNA had an obligation to identify the persons who question h
level of impairment and the reasons for such belief. The April 25, 2003 denial letter does nc
indicate that CNA had any qualified individuals review Ms. Christie's claim file. I suggest t      a
qualified individual is a person who has the requisite education, training, and experience th:
would permit that person to testify in Court and to offer an opinion on impairment.

## a. CNA's Opinions Of Unqualified Individuals Are Unreliable and Inadmissibl

To date, it appears that no qualified medical person reviewed Ms. Christie's medica
records. No medical opinion offered by CNA is sufficiently reliable under the standard
announced in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Ku.      >
Tire Co., v. Carmichael*, 526 U.S. 137(1999), and would not qualify as admissible expert
evidence in a court action. "Nothing in either *Daubert* or the Federal Rules of Evidence rec      es
a district court to admit opinion evidence which is connected to existing data only by the ip

*dixit* of the expert." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*,161 F.3d 77, 81
Cir. 1998). The self serving opinions of CNA are not based on sound medical science and a
merely *ipse dixit* opinion that will be unreliable and inadmissible in a Court action. The sim
reasoning is that undisclosed persons, who appear not to be qualified to render medical or
impairment opinions, have caused The Hartford not to pay benefits.

### i. The Foundation for the Opinions is Not Present.

The standard for evidentiary reliability with regard to the admissibility of expert
testimony, as set forth in *Kumho Tire*, discussed *infra*, "requires a valid . . . connection to t
pertinent inquiry as a precondition to admissibility." *Kumho Tire Co. v. Carmichael*, 119 S
1167, 1175 (1999). As the Ninth Circuit indicated in *Daubert v. Merrill Dow Pharmaceuti*
*Inc.*, following remand by the United States Supreme Court, "it is not enough to just proffer
expert's qualifications, their conclusions, and their assurances of the reliability." *Daubert v*
*Merrill Dow Pharmaceuticals, Inc.*, 43 F. 3rd 1311, 1319 (9th Cir. 1995). Yet, this is precise
what CNA argues.

To infer that restrictions and limitations placed on Ms. Christie by her own medical
doctors are wrong, without having reviewed all medical records or even examined Ms. Chi        e,
is unsupportable and will render CNA's medical reviewer's opinions inadmissible. The Su        me
Court has explicitly rejected reasoning that an expert's opinion must be accepted because tl
person claims to be an expert. "Nothing in either *Daubert* or the Federal Rules of Evidence
requires a district court to admit opinion evidence that is connected to existing data only by
*ipse dixit* of the expert. A court may conclude that there is simply too great an analytical ga
between the data and the opinion proffered." *General Electric Company v. Joiner*, 522 U.S     36,
146 (1997). It is apparent that none of CNA's professionals have conducted any research o:
testing of any kind. This failure to offer any analysis of how they arrived at their opinions,     w
their opinions were derived, or how they researched, tested and validated their opinions rer     's
their opinions materially defective. *See, Darcy v. Huster Co.*, 127 F. 3d 649, 652 (8th Cir.      7)
cert denied, 523 U.S. 1004, 118 S. Ct. 1186 (1998) (expert could have but did not test his t     ry,
and thus had no basis for reaching his opinion); *Cummins v. Lyle Industries*, 93 F. 3d 362,     )-
371 (7th Cir. 1996)(expert failed to conduct tests or research to substantiate his opinions).

In fact, in the end, there is nothing which suggests that CNA's opinion is supported     a
qualified medical expert or person qualified to render an opinion relating to impairment. 1
unknown employees or consultants with respective medical specialties, if any, are not disc      :d.
Their experience in diagnosing and treating patients with injuries similar to Ms. Christie is
undisclosed, as are their educational and training backgrounds. Ms. Christie should not be     to

guess at how and why these professionals employed by CNA reached their conclusions. *See, Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir.1992) (stating that "[t]his sort of disclo: ·: is consonant with the federal courts' desire to make a trial less a game of blindman's buff and 1 ·e a fair contest with the basic issues and facts disclosed to the fullest practical extent").

## ii. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United Sta Supreme Court announced a new test for the admissibility of expert testimony in the Federal Judiciary. Expert testimony must be not only relevant but rest upon a "reliable foundation." *I*. t 597. The Supreme Court assigned to the trial judge the gate keeping function of assuring that scientific expert testimony is admitted in evidence only if it is reliable. *Id.*, "The Court also discussed certain more specific factors, such as testing, peer review, error rates, and "acceptability" in the relevant scientific community, some or all of which might prove helpfu determining the reliability of a particular scientific "theory or technique." *Kumho Tire*, 526 U 137 (1999) (citing the four factors in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S 593-594). The Supreme Court, in *Daubert*, emphasized that these factors are flexible and not meant to be all inclusive. Id. at 594.

## iii. *Kumho Tire Co. v. Carmichael*

In *Kumho Tire*, the *Daubert* gate keeping function was extended to all expert testimor *See, Kumho Tire*, 526 U.S. 137 (1999) (*Daubert*'s general holding applies not only to testimc based upon "scientific knowledge", but also testimony based on "technical" and "other specialized" knowledge). Thus, a trial court may consider one or more of the *Daubert* factor: when doing so will help determine the reliability of expert testimony, but "*Daubert*'s list of specific factors neither necessarily or exclusively applies to all experts or in every case." *Ku* > *Tire*, 119 S. Ct. at 1171. While the trial judge is granted great latitude in deciding how to tes ι expert's reliability, *Daubert* established a standard of evidentiary reliability that "requires a v 1. .. connection to the pertinent inquiry as a pre-condition to admissibility." *Kumho Tire*, 119 : :t. at 1175 (citing *Daubert*, 509 U.S. at 592).

## iv. The *Daubert*-Inspired Analysis of Reliability.

Reduced to its essence, the *Daubert*-inspired analysis of reliability in the admissibilit f expert testimony asks two questions: Does it work and why? *See*, ENVIRONMENTAL LAW REPORTER, *New Approaches to Environmental Law and Agency Regulation: The Daubert Litigation Approach*, 30 ENVTL.L.Rep. 10557, 10562 (July 2000). The questions are more n

Appeals - BMS
The Hartford
March 28, 2005
Page 9

esoteric. The Supreme Court has expressly ruled that "unsupported speculation" and "subjec    ⊃
belief" are not sufficient to be admissible expert evidence. *Daubert*, 509 U.S. at 600. Thus,
trial court's focus "must be solely on principles and methodology of the expert[,]" although i   ay
look to an expert's conclusions in reviewing the reliability of the experts methodology or
technique. *Daubert, 509 U.S. at 595; see also, General Electric Company v. Joiner,* 522 U.$
136, 146 (1997).

### v. Applying the *Daubert*-Inspired Analysis.

In this case, CNA has not disclosed anything of the technique or methodology used to :    :h
its conclusion that Ms. Christie is not entitled to benefits. In fact, all that Ms. Christie is left    h
is unsupported speculation and the implicit assertion that unidentified CNA employees' opin    ₅
are correct and that all of Ms. Christie's physicians are wrong. However, nothing in *Daubert*
permits relying on an opinion that is *ipse dixit* of the expert. *See, Kumho Tire*, 119 S.Ct. at 11
(citing Joiner, 522 U.S. at 146. As the *Daubert* factors are not a definitive checklist or test,
numerous additional questions have been proposed that help frame an analysis of the
reliability of expert testimony which include the *Daubert* factors. *See, Daubert*, 509 U S at :    ;[3]
*See, Saia v. Sears Roebuck and Co., Inc.,*47 F.Supp.2d 141 (D.Mass.1999) (Rejecting expert

---

[3]In the ENVIRONMENTAL LAW REPORTER, *New Approaches to Environmental Law and Agency Regula. The Daubert Litigation Approach*, the analysis is outlined as follows:

Examples of the "Does it work?" question:

(1) Whether the theory or technique can be, and has been, tested empirically; (2) its error rate; (3) the ι    vhich has been made of the new technique; (4) the care with which the technique was employed in the case; (5) the soundr and reliability of the process or technique used in generating the evidence; (6) the proffered connection between scientific research or test result to be presented, and the particular disputed factual issues in the case; (7) the existence and maintenance of standards governing its use; and (8) presence of safeguards in the characteristics o    ⊃ technique.

Examples of the "Why?" question:

(1) Whether it has been subjected to peer review and publication; (2) the extent to which the technique    been accepted by scientists in the field involved; (3) the availability of other experts to test and evaluate the technique    } the reputation of the expert within the scientific community; (5) the strengths of opposing views and the standing the person who express them; (6) whether the expert is prepared to discuss uncertainties in the techniques used t prepare the evidence and in the conclusions; (7) the expert's qualifications and stature; (8) the existence of specialized literature; (9) analogy to other scientific techniques whose results are admissible; (10) the novelty of new invention; (11) the extent to which the technique relies on the subjective interpretation of the expert; (12) whether both sides to the controversy have reasonably comparable access to scientific authorities: (13) the clarit    d simplicity with which the technique can be described and its results explained; and (14) the nature and breadth o    ⊃ inference adduced.

Appeals - BMS
The Hartford
March 28, 2005
Page 10

opinion even though proposed expert had testified in many other jurisdictions as to "intangibl·
damages"); *SMS Systems Maintenance Serv. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st
Cir.1999) ("[e]xpert opinions are no better than the data and methodology that undergrid therr
An expert must vouch for the reliability of the data on which he relies and explain how the
cumulation of that data was consistent with the standards of the profession; expert testimony t
offers only a bare conclusion is insufficient to prove the expert's search.").

Applying the *Daubert* analysis as framed by the questions "Does it work and why" lea     o
the inevitable conclusion that CNA's and The Hartford's opinions are unreliable and that Ms.
Christie is entitled to immediate payment of benefits.

## DEMAND IS HEREBY MADE THAT THE HARTFORD
## INSURANCE COMPANY IMMEDIATELY:

1.    Pay to Ms. Christie benefits forthwith retroactive to 90 days after August 30, 2·     ;

2.    Commence and continue paying to Ms. Christie all sums due under the Insuran
      Policy of which Ms. Christie is the holder;

3.    Pay to Ms. Christie Massachusetts statutory interest at the rate of twelve percer
      per annum for all overdue benefits;

4     Pay to Ms. Christie attorneys' fees to reimburse for legal fees incurred to
      date; and

5.    Identify by name and the qualifications of all individuals whom CNA
      relies upon to deny benefits to date.

If The Hartford does not comply with this demand or make a reasonable offer to settle     d
to compromise all claims within 30 days of receipt of this demand letter, then The Hartford
should be advised that Ms. Christie will commence a civil action against The Hartford seeking    l
damages compensable for its unfair and deceptive conduct that violated G. L. c. 93A and G. L
176D and other common law remedies. The Hartford should be advised that failure to timely
respond to a Consumer Demand Letter under G. L. c. 93A is also a violation of the applicable
statute. The Hartford should be advised that if a Court finds that The Hartford wilfully or
knowingly violated G.L. c.93A and the regulations promulgated thereunder, the Court may aw
double or treble damages against The Hartford and will award attorneys' fees to Ms. Christie.

I look forward to hearing from you promptly to resolve this matter.

Appeals - BMS
The Hartford
March 28, 2005
Page 11

Thank you for your courtesy and cooperation in this matter.

Very truly yours,

Jonathan M. Feigenbaum

JMF/rtr
Enclosure record - CD-ROM
cc: Joyce Christie - letter only
L:\LITG\acin001\TheHartford.Joyce.L.03.28.05.wpd

| CIVIL ACTION COVER SHEET | DOCKET NO(S) | Trial Court of Massachusett Superior Court Department County: |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Joyce Christie | Hartford Life Group Insurance Comp y |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Jonathan M. Feigenbaum, Esquire<br>Phillips & Angley<br>One Bowdoin Square, Boston, MA  02114<br>Board of Bar Overseers number:  546686 | |

**Origin code and track designation**

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify)     TRACK | IS THIS A JURY CASE? |
|---|---|---|
| A99 | Insurance Contract              ( F ) | (X ) Yes    ( ) No |

The following is a full, itemized and detailed description of the facts on which plaintiff relies to dete  ie
money damages.  For this form, disregard double or treble damage claims; indicate single damage  ly.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
   Subtotal $ . . . . . .

B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
F. Other documented items of damages (describe)
   $ . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

   $ . . . . . .
   TOTAL $ . . . . . .

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Plaintiff is a beneficiary under the defendant's insurance policy issued under a contract with the Commonwealth of Massachusetts that provides disability insurance coverage
TOTAL $ 25,0 .00.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERI
COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform I   s on
Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected   pute
resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 8/9

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON
SEPT. 15, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____

ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

**3**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 05-3407

........................................................................

JOYCE CHRISTIE                    )
             Plaintiff        )
                                 )
                                 )
v.                                )
HARTFORD LIFE GROUP INSURANCE     )
COMPANY as successor to CNA GROUP )
LIFE ASSURANCE COMPANY            )
             Defendant        )
........................................................................ )

**FIRST AMENDED**
**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF WITH JURY DEMAN**

Plaintiff Joyce Christie brings this complaint against defendant Hartford Life Group

Insurance Company as successor to CNA Group Life Assurance Company for violation of the

Massachusetts Consumer Protection Act, G.L. c. 93A, and the Unfair Methods of Competition

and Unfair and Deceptive Acts and Practices in the Business of Insurance Act, G.L. c. 176D.

The Defendant insurer has engaged in unfair or deceptive acts or practices within the meaning

M.G.L. c. 93A, §§ 2 and 9, and unfair or deceptive acts or practices in the business of insuranc

within the meaning of 176D by denying plaintiff's claim, in bad faith, for disability benefits.

Plaintiff seeks damages for breach of contract, violation of G. L. c. 176D and G. L. c. 93A for

defendant's unfair and deceptive insurance practices, common law bad faith insurance practice

and injunctive relief precluding the defendant insurer from continuing to violate the terms of tl

insurance contract.

## PARTIES

1.  The Plaintiff Joyce Christie ("Ms. Christie") is an individual having a ususal place of
    residence at New Bedford, Bristol County, Massachusetts.

2.  The Defendant Hartford Life Group Insurance Company ("The Hartford") is an insura
    company existing under the laws of the State of Connecticut having a place of busines
    Hartford, Connecticut and is licensed to issue insurance contracts to citizens of the
    Commonwealth of Massachusetts. The Hartford is the successor to CNA Group Life
    Assurance Company.

## JURISDICTION AND VENUE

3.  Personal jurisdiction is predicated against The Hartford as being licensed to provide
    insurance contracts to citizens of the Commonwealth of Massachusetts, including
    Ms. Christie.

4.  Venue is proper in Suffolk County as The Hartford executed and delivered an insuranc
    contract with the Commonwealth of Massachusetts Group Insurance Commission that
    has its principle place of business at Boston, Suffolk County, Massachusetts.

## FACTS COMMON TO ALL COUNTS

5.  At all times material hereto, Ms. Christie was employed as an assistant to the housing
    manager by the Fall River Housing Authority. The Fall River Housing Authority is an
    instrumentality of the Commonwealth of Massachusetts.

2

6.  At all times material hereto, Ms. Christie paid premiums for disability coverage provic
    by CNA Group Life Assurance Company and/or The Hartford, pursuant to the terms o   ı
    insurance contract with the Commonwealth of Massachusetts Group Insurance
    Commission, of which Ms. Christie is an insured or beneficiary.

7.  In or about calender year 2005, The Hartford acquired CNA Group Life Assurance
    Company, including the disability insurance policy covering Ms. Christie.

8.  Ms. Christie obtained the aforementioned insurance contract through her employment
    with the Fall River Housing Authority in conjunction with a benefit plan offered by the
    Commonwealth of Massachusetts under the Group Insurance Commission.

9.  On or about August 20, 2002, the Fall River Housing Authority instructed Ms. Christic
    not return to work, because she was unable to perform the material and substantial dut
    of her occupation as required by her employer, as a result of a physical injury.

10. Ms. Christie's inability to perform, on a continuous basis,  the material and substantial
    duties of her occupation, was supported by opinions of treating medical doctors.

11. The material and substantial duties of Ms. Christie's occupation, include but are not
    limited to:

    a.  Working in front of a computer terminal two (2) - four (4) hours per 6
        (six) and one half (½) hour day;

    b.  Being able to lift twenty pounds from waist to waist and floor to waist c
        frequent basis;

    c.  Being able to climb thirty (30) stairs each day for a total of one (1) hour
        per 6 and ½ hour day;

3

d.     Being able to work both standing and seated for at least two (2) hours ɛ time; and

e.     Being able to type fifty (50) words per minute.

12.    Ms. Christie's treating doctors opined that Ms. Christie was unable to continuously perform the material and substantial duties of her occupation on a regularly and sustai: basis, due to degenerative disc disease compounded by a motor vehicle trauma, and ot health difficulties.

13.    Ms. Christie sought disability benefits from CNA Group Life Assurance Company, the predecessor to The Hartford.

14.    Despite submitting substantial medical and vocational documentation in support of he claim for benefits, CNA Group Life Assurance Company, the predecessor to The Hartford, and The Hartford refused to pay benefits to Ms. Christie for various reasons.

15.    Ms. Christie appealed benefits denials to CNA Group Life Assurance Company, the predecessor to The Hartford, and to The Hartford on a number of occasions.

16.    Despite these appeals, CNA Group Life Assurance Company, the predecessor to The Hartford, and The Hartford, continued to deny Ms. Christie's claim for benefits.

## COUNT I

## BREACH OF CONTRACT

17.    Ms. Christie  repeats and realleges the allegations set forth in Paragraphs 1 through 16 incorporates the same by reference herein.

4

18.  Ms. Christie fulfilled all of her obligations in order to receive disability benefits under
     insurance contract with CNA Group Life Assurance Company, the predecessor to The
     Hartford, and The Hartford.

19.  Ms. Christie delivered to both CNA Group Life Assurance Company, the predecessor
     The Hartford, and The Hartford, medical and vocational documentation that she was, a
     is continuously unable to perform the material and substantial duties of her occupation

20.  Both CNA Group Life Assurance Company and The Hartford breached their duties und
     the insurance contract by refusing to pay benefits to Ms. Christie.

21.  As a direct and proximate result of the breach of the insurance contract, both CNA Grc
     Life Assurance Company and The Hartford caused Ms. Christie to suffer damages.

## COUNT II

### VIOLATION OF M.G.L. c. 93A and c. 176D

22.  Ms. Christie repeats and realleges the allegations set forth in Paragraphs 1
     through 21 and incorporates the same by reference herein.

23.  At all times material hereto, CNA Group Life Assurance Company and The Hartford
     have been engaged in trade or commerce as those terms are defined under G. L. c. 93A

24.  At all times material hereto, CNA Group Life Assurance Company and The Hartford sc
     to Ms. Christie a contract of insurance as defined under G. L. c. 175.

25.  On March 31, 2005, The Hartford received from Ms. Christie's counsel a "Demand
     Letter" seeking relief under G. L. c. 93A and c. 176D. A copy of the letter and the retu
     receipt card indicating receipt by The Hartford is attached as EXHIBIT A.

26.  The Hartford never responded to the Demand Letter.

5

27.     The Hartford, and its predecessor, The CNA Group Life Assurance Company, engage

        deceptive acts and practices that violated both G. L. c. 93A and c. 176D, as set out in

        detail in the Demand Letter.

28.     By failing to respond to the Demand Letter, The Hartford engaged in a separate violati

        of both G. L. c. 93A and c. 176D.

29.     The unfair and deceptive acts and practices of both The Hartford, and its predecessor,

        CNA Group Life Assurance Company, were performed willingly and knowingly.

30.     Both The Hartford, and its predecessor, CNA Group Life Assurance Company,

        materially violated G. L. c. 93A and c. 176D but its oppressive acts and ommissions.

31.     As a direct and proximate result of the acts and omissions of both CNA Group Life

        Assurance Company and The Hartford, particularly its refusal to pay benefits to Ms.

        Christie caused her to suffer damages.

## COUNT III

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

32.     Ms. Christie repeats and realleges the allegations set forth in Paragraphs 1

        through 31 and incorporates the same by reference herein.

33.     Both The Hartford, and its predecessor, CNA Group Life Assurance Company, breache

        the covenant of good faith and fair dealing implied in the terms of the insurance contrad

        with the Commonwealth of Massachusetts Group Insurance Commission and Ms.

        Christie by failing to pay benefits due to Ms. Christie, and by denying insurance covera

        to Ms. Christie as reasonably expected by an insured.

34.    As a direct and proximate result of acts and omissions of CNA Group Life Assurance
       Company's and The Hartford's refusal to pay benefits to Ms. Christie, Ms. Christie ha
       suffered damages.

## PRAYERS FOR RELIEF

        WHEREFORE, the Plaintiff, Joyce Christie, prays for judgment against the Defendant
Hartford Life Group Insurance Company as successor to CNA Group Life Assurance Compan
as follows:

1.     Enter an order and decree requiring the defendant to pay on-going disability benefits to
       the plaintiff until such time that it has a lawful reason to cease paying benefit payment:
       the plaintiff;

2.     Award Damages in an amount which this Court shall determine to be necessary and
       proper to compensate the plaintiff for her injuries together with pre-judgment interest
       from the date of breach of the contract, post-judgment interest, reasonable attorneys' fe
       and costs;

3.     Award treble damages as allowed under G. L. c. 93A and pre-judgment interest from tl
       date of breach of the contract, post-judgment interest and costs and reasonable attorney
       fees, and all other relief allowed by this statute;

4.     Award punitive damages for violating the covenant of good faith and fair dealing and
       engaging in bad faith insurance practices; and

5.     For such other and further relief as this Court deems just and proper.

7

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

JOYCE CHRISTIE
By her attorneys,

Jonathan M. Feigenbaum, Esq.
B.B.O. # 546686
Stephanie M. Swinford, Esq.
B.B.O. # 654135
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. 617-367-8787

L:\Jchr001\complaint.first amended.wpd

I HEREBY ATTEST AND CERTIFY ON
SEPT. 15, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

8

■ Complete items 1, 2, and 3. Also complete
  Item 4 If Restricted Delivery Is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.  ACIN 001

A. Signature
X [signature]  ☐ Agent
                ☐ Addres

B. Received by ( Printed Name)  C. Date of Deliv.
   GARY PERSONA

1. Article Addressed to:

D. Is delivery address different from item 1?
   If YES, enter delivery address:  ☐ No

Appeals-BMS
The HARTFORD
P.O. BOX 299
HartFord, CT 06141-0299

EX A

3. Service Type
   ☐ Certified Mail    ☐ Express
   ☐ Registered        ☐ Return
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7004 0750 0000 5529 85

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

PHILLIPS & ANGLEY
ONE BOWDOIN SQUARE
BOSTON, MASS 02114

22

PHILLIPS & ANGLEY
ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(617) 367-8787

JEFFREY J. PHILLIPS, P.C.
JEFFREY T. ANGLEY, P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
STEPHANIE M. SWINFORD
KRISTEN M. PLOETZ

*ALSO ADMITTED IN DC AND CA

TELECOPIER (617) 227-8   2

March 28, 2005
**CERTIFIED MAIL**
No.7004 0750 0000 5529 9285

Appeals - BMS
The Hartford
P.O. Box 299
Hartford, CT 06141-0299

J L F l, ᶜl

Re:    Joyce Christie
       Claim No. 2445149111
       Policy No. 83130411
       CNA Policy for Commonwealth of Massachusetts Employees ("Insurance Policy")

Dear Sir or Madam:

I am counsel for Joyce Christie("Ms. Christie" hereinafter) as further identified above. Upon receipt of this letter, I am requesting that The Hartford either mail or fax to me at 617-2 8992 confirmation that this letter and the enclosed CD-ROM have been received.

Reference is made to a Commonwealth of Massachusetts long term disability benefits insurance policy originally issued by CNA. I am aware that Ms. Christie's former attorney, Deborah Kohl, has corresponded with CNA regarding a claim for benefits, to which CNA consistently denied the claim. I know that CNA made a mistake in its evaluation of Ms. Christie's claim, and therefore, I am writing to you to look at this matter again. Since Ms. Christie is employed by the Commonwealth of Massachusetts, the administration of the insurance policy is not subject to the Employee Retirement Income Security Act of 1974 ("ERISA" hereinafter). Ms. Christie has remedies available to her under Massachusetts Gene Laws Chapter 93A and 176D relating to unfair insurance practices. I am requesting that The Hartford promptly review this matter and begin paying benefits to Ms. Christie retroactive to    r date of disability of August 30, 2002, taking into account the ninety (90) day elimination per

After reviewing CNA's denial letters it appears that CNA did not engage in a fair cla    ;
process. Since CNA sold its long term disability business to The Hartford, there is now an

Appeals - BMS
The Hartford
March 28, 2005
Page 2

opportunity for The Hartford to correct the unfair practices of CNA. Throughout this letter CN and The Hartford are referred to interchangeably.

I have included a CD-ROM[1] for review with this letter. The CD-ROM contains approximately 525 pages of medical records, vocational information, a job description, worke compensation records etc., demonstrating that Ms. Christie is disabled under the terms of the applicable insurance policy.

Ms. Christie has been receiving workers' compensation benefits for a significant perio of time. As I am sure The Hartford is aware, the workers' compensation provider has tried unsuccessfully to terminate those benefits. As such, the determination of the workers' compensation system is indicative that Ms. Christie is disabled and entitled to benefits under Hartford insurance policy.

Please consider this letter a demand under Massachusetts General Laws Chapter 93A 176D relating to unfair insurance practices, permitting Ms. Christie to bring a claim for "bad faith" or "unfair and deceptive" insurance practices in the event that The Hartford refuses to begin paying benefits. Ms. Christie will not be barred under the ERISA preemption from asserting such a claim.

Under Massachusetts law, if payment is otherwise due under an insurance policy, an insurer violates Chapter 93A if it imposes conditions on the payment that are not required un the policy. *See Bertassi v. Allstate Ins. Co.*, 402 Mass. 366, 370-71, 522 N.E.2d 949, 951-52 (1988). For example, in *Bertassi*, the insured had sought under insured motorist coverage ur two automobile policies. *Bertassi v. Allstate Ins. Co.*, 402 Mass. at 368, 522 N.E.2d at 951. insurer acknowledged the insured's right to coverage under the policies but as a condition to payment, it demanded that the insured execute an agreement protecting the insurer's subroga rights. No policy provision required the insured to execute such an agreement. The Supreme Judicial Court held that the insurer's insistence that the insured sign the agreement violated Chapter 93A. The specific violations are set forth below in this letter.

---

[1]The CD-ROM may be read using Adobe Acrobat Reader, which most computer use have at their disposal or may be obtained free of charge at www.adobe.com. If The Hartford desires a paper copy of the documents on the CD-ROM, then please contact the undersigned nd I will Federal Express paper copies of the documents on the CD-ROM.

Appeals - BMS
The Hartford
March 28, 2005
Page 3

The touchstone of the relationship between the insurer and the insured is honesty and f
dealing. In this instance, CNA did not deal fairly with Ms. Christie. CNA plainly violated a
universal insurance doctrine know as the "reasonable expectations of the insured." Ms. Christ
paid premiums to CNA in consideration of insurance benefits as set forth in the Insurance Pol
CNA breached its obligations to Ms. Christie as it has engaged in a course of conduct to deny
benefits to Ms. Christie even though she is clearly entitled to receipt of benefits. Although, thi
doctrine has been most discussed by the Courts under California law, it is also well settled un
Massachusetts law. *Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 280-2
675 N.E.2d 1161 (1997). "Courts will protect the reasonable expectations of...insureds."
*Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 387 (9th Cir. 1994). "Where partic
provisions, if read literally, would largely nullify the insurance, they will be severely restricte
as to enable fair fulfillment of the state policy objective." *Henry v. Home Ins. Co.*, 907 F. Sup
1392, 1397 (C.D. Cal. 1995). The purpose of the "reasonable expectations doctrine" is to pro
insured's "objectively reasonable expectations of coverage." *Winters v. Costco,* 49 F.3d 550,
(9th Cir. 1995)."Generally, accident policies should be so interpreted that provisions of the
policies effectuate the reasonable expectations of the purchaser. An average person buying a
personal accident policy assumes he is covered for any fortuitous and undesigned injury." 1A
Appleman & J. Appleman, Insurance Law and Practice §§ 360 (1981). *Kolb v. The Paul Rev*
*Insurance Companies,* 355 F.3d 1132 (8th Cir. 2004).

Plainly, CNA abrogated Ms. Christie's reasonable expectations arising under the
Insurance Policy. Ms. Christie paid premiums to CNA, now The Hartford, because she belie
that in the unlikely event she suffered a life altering illness or injury, CNA would honor the t    is
of her Insurance Policy and pay her monthly benefits. That reasonable expectation of Ms.
Christie has been materially breached by CNA. CNA's failure to pay benefits due to her is a
violation of law.

## I. BRIEF OCCUPATIONAL BACKGROUND OF MS. CHRISTIE.

Ms. Christie is a fifty plus year old former assistant to the Housing Manager of the F
River Housing Authority. The actual job description is set forth beginning on page one of th
documents on the enclosed CD-ROM. Her duties had a physical component and it is that
physical component that she has been unable to do since August 2002. In addition to certain
office requirements such as working in front of a computer for a substantial portion of her w
day, Ms. Christie was required to climb stairs and to lift from floor to waist and from waist
waist at least 20 lbs. Ms. Christie simply has been unable to do these functions since Augus
2002.

Appeals - BMS
The Hartford
March 28, 2005
Page 4

## II. MS. CHRISTIE'S INJURIES.

Ms. Christie's work related injuries, and degenerative diseases are well documented in
the enclosed medical records. I urge The Hartford to review those records and the findings of .
number of examining doctors, who concluded that Ms. Christie's ability to engage in the mate:
duties of her occupation are precluded by the injuries and disease.

## III. THE DEFINITION OF DISABILITY IN THE INSURANCE POLICY.

Under the Insurance Policy, The Hartford is required to pay disability benefits to Ms.
Christie if she is suffering from Disability.

The Insurance Policy definition for Disability is:
*Injury or Sickness causes physical or mental impairment to such a degree of*
*severity that you are: continuously unable to perform the material and*
*substantial duties of your regular occupation; and not gainfully employed.*

The remainder of the Insurance Policy requires that Ms. Christie be under the regular c
of a doctor. The Hartford cannot reasonably dispute that Ms. Christie has not been under the
continuous care of a medical doctor from August 2002.

"Disability insurance policies generally fall into two classes: occupational insurance,
which provides coverage if the insured is unable to pursue the particular occupation in which
was previously engaged; and general insurance, which provides coverage only if the insured i
unable to pursue any occupation." *Dawes v. First Unum Life Ins. Co.,* 851 F.Supp. 118, 121-2
(S.D.N.Y.1994); *See also, Scalia v. Travelers Ins. Co.,* 210 So.2d 373, 374-75 (La.Ct.App.19
(holding that owner and operator of motor vehicle service station was totally disabled under F
occupational disability policy after back injury left him unable to engage in any physical aspe
of his job, even though he could still perform administrative, record keeping tasks).

Here, the Insurance Policy is an occupational, rather than income replacement policy.
Because occupational disability policies are "designed to indemnify against loss of capacity t
work, not against loss of income..., he may still recover total disability benefits "if such dutie       )
not constitute a substantial part of the duties normally required of the job." 15 Couch, § 53:
at 115." In other words, Ms. Christie need not be bed ridden in order to collect benefits undei       e
CNA - The Hartford insurance policy. In this case, Ms. Christie is entitled to benefits becaus
she cannot work in the capacity of her own occupation. Her doctors and others clearly say so

Appeals - BMS
The Hartford
March 28, 2005
Page 5

## IV. THE VIOLATIONS OF G. L. C. 93A AND 176D.

The Hartford's conduct has been willfully unfair and deceptive in violation of the Massachusetts Consumer Protection Act, G.L.c.93A, §2, §9, and the regulations promulgated thereunder, and made applicable to the insurance practices under G.L.c.176D, §3. The Hartford's and CNA's actions and omissions constitute unfair or deceptive acts or practices in violation of G.L.c.176D as set forth below[2]:

1. 176D §(9)(b): failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policy. This is demonstrated by The Hartford's utter failure to pay any benefits to date despite the overwhelming medical, occupational, and earnings history materials demonstrating that Ms. Christie is entitled to benefits. Since Ms. Christie's debilitating symptoms include pain in her neck and back, it is impossible to provide objective evidence of pain because there is no objective measure of pair For example, if I held a match to my palm and burnt it to a crisp, I could report that the burn w painful, however, no physician could objectively measure the pain. By its nature, pain is alway self-reported. I suggest that the "objective evidence" of debilitating and chronic pain is demonstrated by Ms. Christie's need for prescription medicine to combat the daily pain.

In the ERISA context, there has been a substantial amount of litigation, which has consistently resulted in decisions against insurers. For example, in *Palmer v. University Medic Group*, 994 F. Supp.1221 (D.Ore.1998), the Court found that not all medical conditions are readily susceptible to verification by x-rays or other laboratory tests. Some complaints--such a pain and fatigue--are difficult to objectively measure.... Merely because we cannot see pain or fatigue on an x-ray, or measure it in a laboratory, does not mean that it is not real.... These symptoms may also persist notwithstanding our uncertainty as to the precise etiology. In such cases, diagnostic procedures such as x-rays and lab tests are only one component of the total picture. *Palmer v. Univ. Med. Group*, 994 F.Supp. 1221, 1233 (D.Or.1998). In the ERISA disability context, the First Circuit Court of Appeals has followed this rational, noting in a Chronic Fatigue Syndrome case, that "there is no dipstick test"for Chronic Fatigue Syndrome. *Cook v. Liberty Life*, 320 F.3d 11, 21 (1st Cir. 2003). In other words, pain cannot be objectivel determined.

---

[2]The general violations set forth above are stated in greater detail elsewhere in this lett

Appeals - BMS
The Hartford
March 28, 2005
Page 6

In the SSA context, in *Pollini v. Raytheon Disability Employee Trust*, 54 F.Supp.2d 54, 59 (D.Mass.1999), the Court stated in part:

> Moreover, even though subjective evidence is arguably less dependable than objective evidence, a doctor's assessment of pain is not insignificant medical testimony. For example, in considering whether a person is "disabled" within the meaning of the Social Security Act, the SSA considers pain a significant non-exertional impairment. See *Nguyen v. Chater,* 172 F.3d 31 (1st Cir.1999).

2. 176D §3(9)(d): refusing to pay claims without conducting a reasonable investigation based upon all available information. The same grounds as set forth in 1 above prove this allegation. For example, in CNA's denial letter of April 25, 2003 addressed to Deborah Kohl, CNA provided the most cryptic reasoning for denying benefits. Ms. Christie is unable to determine how CNA could come to its conclusion in rejecting the findings of Ms. Christie's examining and treating doctors.

3. 176D §3(9)(f): failing to effectuate prompt, fair and equitable settlements of claims which liability has become reasonably clear. The same grounds as set forth in 1 and 2 above support this allegation.

It is impossible to determine if any CNA employee doubted the veracity of the medical conclusions of Ms. Christie's many treating doctors regarding limitations and restrictions imposed and recommended by those doctors and Ms. Christie's report of limitations. In order deal fairly with Ms. Christie, CNA had an obligation to identify the persons who question her level of impairment and the reasons for such belief. The April 25, 2003 denial letter does not indicate that CNA had any qualified individuals review Ms. Christie's claim file. I suggest tha qualified individual is a person who has the requisite education, training, and experience that would permit that person to testify in Court and to offer an opinion on impairment.

### a. CNA's Opinions Of Unqualified Individuals Are Unreliable and Inadmissible.

To date, it appears that no qualified medical person reviewed Ms. Christie's medical records. No medical opinion offered by CNA is sufficiently reliable under the standard announced in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumar Tire Co., v. Carmichael*, 526 U.S. 137(1999), and would not qualify as admissible expert evidence in a court action. "Nothing in either *Daubert* or the Federal Rules of Evidence requi a district court to admit opinion evidence which is connected to existing data only by the *ipse*

*dixit* of the expert." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*,161 F.3d 77, 81 (1 Cir. 1998). The self serving opinions of CNA are not based on sound medical science and are merely *ipse dixit* opinion that will be unreliable and inadmissible in a Court action. The simp! reasoning is that undisclosed persons, who appear not to be qualified to render medical or impairment opinions, have caused The Hartford not to pay benefits.

### i. The Foundation for the Opinions is Not Present.

The standard for evidentiary reliability with regard to the admissibility of expert testimony, as set forth in *Kumho Tire*, discussed *infra*, "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Kumho Tire Co. v. Carmichael*, 119 S.( 1167, 1175 (1999). As the Ninth Circuit indicated in *Daubert v. Merrill Dow Pharmaceutica Inc.*, following remand by the United States Supreme Court, "it is not enough to just proffer t expert's qualifications, their conclusions, and their assurances of the reliability." *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F. 3rd 1311, 1319 (9th Cir. 1995). Yet, this is precisel; what CNA argues.

To infer that restrictions and limitations placed on Ms. Christie by her own medical doctors are wrong, without having reviewed all medical records or even examined Ms. Chri: is unsupportable and will render CNA's medical reviewer's opinions inadmissible. The Sup Court has explicitly rejected reasoning that an expert's opinion must be accepted because the person claims to be an expert. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by t *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Company v. Joiner*, 522 U.S. 146 (1997). It is apparent that none of CNA's professionals have conducted any research or testing of any kind. This failure to offer any analysis of how they arrived at their opinions, h their opinions were derived, or how they researched, tested and validated their opinions rend their opinions materially defective. *See, Darcy v. Huster Co.*, 127 F. 3d 649, 652 (8th Cir. 1§ cert denied, 523 U.S. 1004, 118 S. Ct. 1186 (1998) (expert could have but did not test his th and thus had no basis for reaching his opinion); *Cummins v. Lyle Industries*, 93 F. 3d 362, 3 371 (7th Cir. 1996)(expert failed to conduct tests or research to substantiate his opinions).

In fact, in the end, there is nothing which suggests that CNA's opinion is supported l qualified medical expert or person qualified to render an opinion relating to impairment. Th unknown employees or consultants with respective medical specialties, if any, are not disclc Their experience in diagnosing and treating patients with injuries similar to Ms. Christie is undisclosed, as are their educational and training backgrounds. Ms. Christie should not be l(

guess at how and why these professionals employed by CNA reached their conclusions. *See, Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir.1992) (stating that "[t]his sort of disclosur is consonant with the federal courts' desire to make a trial less a game of blindman's buff and mo a fair contest with the basic issues and facts disclosed to the fullest practical extent").

### ii. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court announced a new test for the admissibility of expert testimony in the Federal Judiciary. Expert testimony must be not only relevant but rest upon a "reliable foundation." *Id.* : 597. The Supreme Court assigned to the trial judge the gate keeping function of assuring that scientific expert testimony is admitted in evidence only if it is reliable. *Id.*, "The Court also discussed certain more specific factors, such as testing, peer review, error rates, and "acceptability" in the relevant scientific community, some or all of which might prove helpful in determining the reliability of a particular scientific "theory or technique." *Kumho Tire*, 526 U.S 137 (1999) (citing the four factors in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. at 593-594). The Supreme Court, in *Daubert*, emphasized that these factors are flexible and not meant to be all inclusive. Id. at 594.

### iii. *Kumho Tire Co. v. Carmichael*

In *Kumho Tire*, the *Daubert* gate keeping function was extended to all expert testimony. *See, Kumho Tire*, 526 U.S. 137 (1999) (*Daubert*'s general holding applies not only to testimony based upon "scientific knowledge", but also testimony based on "technical" and "other specialized" knowledge). Thus, a trial court may consider one or more of the *Daubert* factors when doing so will help determine the reliability of expert testimony, but "*Daubert*'s list of specific factors neither necessarily or exclusively applies to all experts or in every case." *Kumh Tire*, 119 S. Ct. at 1171. While the trial judge is granted great latitude in deciding how to test a expert's reliability, *Daubert* established a standard of evidentiary reliability that "requires a vali . . connection to the pertinent inquiry as a pre-condition to admissibility." *Kumho Tire*, 119 S. ( at 1175 (citing *Daubert*, 509 U.S. at 592).

### iv. The *Daubert*-Inspired Analysis of Reliability.

Reduced to its essence, the *Daubert*-inspired analysis of reliability in the admissibility c expert testimony asks two questions: Does it work and why? *See*, ENVIRONMENTAL LAW REPORTER, *New Approaches to Environmental Law and Agency Regulation: The Daubert Litigation Approach*, 30 ENVTL.L.Rep. 10557, 10562 (July 2000). The questions are more th:

Appeals - BMS
The Hartford
March 28, 2005
Page 9

esoteric. The Supreme Court has expressly ruled that "unsupported speculation" and "subjecti
belief" are not sufficient to be admissible expert evidence. *Daubert*, 509 U.S. at 600. Thus, th
trial court's focus "must be solely on principles and methodology of the expert[,]" although it i
look to an expert's conclusions in reviewing the reliability of the experts methodology or
technique. *Daubert, 509 U.S. at 595; see also, General Electric Company v. Joiner,* 522 U.S.
136, 146 (1997).

### v. Applying the *Daubert*-Inspired Analysis.

In this case, CNA has not disclosed anything of the technique or methodology used to re
its conclusion that Ms. Christie is not entitled to benefits. In fact, all that Ms. Christie is left w
is unsupported speculation and the implicit assertion that unidentified CNA employees' opinic
are correct and that all of Ms. Christie's physicians are wrong. However, nothing in *Daubert*
permits relying on an opinion that is *ipse dixit* of the expert. *See, Kumho Tire,* 119 S.Ct. at 117
(citing Joiner, 522 U.S. at 146. As the *Daubert* factors are not a definitive checklist or test,
numerous additional questions have been proposed that help frame an analysis of the
reliability of expert testimony which include the *Daubert* factors. *See, Daubert,* 509 U S at 5C
*See, Saia v. Sears Roebuck and Co., Inc.,*47 F.Supp.2d 141 (D.Mass.1999) (Rejecting expert's

---

[2]In the ENVIRONMENTAL LAW REPORTER, *New Approaches to Environmental Law and Agency Regulati*
*The Daubert Litigation Approach*, the analysis is outlined as follows:

Examples of the "Does it work?" question:

(1) Whether the theory or technique can be, and has been, tested empirically; (2) its error rate; (3) the us    uch b.s
been made of the new technique; (4) the care with which the technique was employed in the case; (5) the soundne
and reliability of the process or technique used in generating the evidence; (6) the proffered connection between t
scientific research or test result to be presented, and the particular disputed factual issues in the case; (7) the
existence and maintenance of standards governing its use; and (8) presence of safeguards in the characteristics of
technique.

Examples of the "Why?" question:

(1) Whether it has been subjected to peer review and publication; (2) the extent to which the technique h    een
accepted by scientists in the field involved; (3) the availability of other experts to test and evaluate the technique;
the reputation of the expert within the scientific community; (5) the strengths of opposing views and the standing
the person who express them; (6) whether the expert is prepared to discuss uncertainties in the techniques used to
prepare the evidence and in the conclusions; (7) the expert's qualifications and stature; (8) the existence of
specialized literature; (9) analogy to other scientific techniques whose results are admissible; (10) the novelty of t
new invention; (11) the extent to which the technique relies on the subjective interpretation of the expert; (12)
whether both sides to the controversy have reasonably comparable access to scientific authorities; (13) the clarity
simplicity with which the technique can be described and its results explained; and (14) the nature and breadth of
inference adduced.

Appeals - BMS
The Hartford
March 28, 2005
Page 10

opinion even though proposed expert had testified in many other jurisdictions as to "intangible damages"); *SMS Systems Maintenance Serv. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir.1999) ("[e]xpert opinions are no better than the data and methodology that undergrid them . An expert must vouch for the reliability of the data on which he relies and explain how the cumulation of that data was consistent with the standards of the profession; expert testimony th offers only a bare conclusion is insufficient to prove the expert's search.").

Applying the *Daubert* analysis as framed by the questions "Does it work and why" lead: the inevitable conclusion that CNA's and The Hartford's opinions are unreliable and that Ms. Christie is entitled to immediate payment of benefits.

## DEMAND IS HEREBY MADE THAT THE HARTFORD INSURANCE COMPANY IMMEDIATELY:

1.  Pay to Ms. Christie benefits forthwith retroactive to 90 days after August 30, 20(

2.  Commence and continue paying to Ms. Christie all sums due under the Insuranc Policy of which Ms. Christie is the holder;

3.  Pay to Ms. Christie Massachusetts statutory interest at the rate of twelve percent per annum for all overdue benefits;

4   Pay to Ms. Christie attorneys' fees to reimburse for legal fees incurred to date; and

5.  Identify by name and the qualifications of all individuals whom CNA relies upon to deny benefits to date.

If The Hartford does not comply with this demand or make a reasonable offer to settle to compromise all claims within 30 days of receipt of this demand letter, then The Hartford should be advised that Ms. Christie will commence a civil action against The Hartford seeking damages compensable for its unfair and deceptive conduct that violated G. L. c. 93A and G. L. 176D and other common law remedies. The Hartford should be advised that failure to timely respond to a Consumer Demand Letter under G. L. c. 93A is also a violation of the applicable statute. The Hartford should be advised that if a Court finds that The Hartford wilfully or knowingly violated G.L. c.93A and the regulations promulgated thereunder, the Court may aw; double or treble damages against The Hartford and will award attorneys' fees to Ms. Christie.

I look forward to hearing from you promptly to resolve this matter.

Appeals - BMS
The Hartford
March 28, 2005
Page 11

Thank you for your courtesy and cooperation in this matter.

Very truly yours,

Jonathan M. Feigenbaum

JMF/rtr
Enclosure record - CD-ROM
cc: Joyce Christie - letter only
L:\LITG\acin001\TheHartford.Joyce.L.03.28.05.wpd

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-3407

Joyce Christie _____, Plaintiff(s)

v.

Hartford Life Group Insurance Company Defendant(s)

## SUMMONS

To the above-named Defendant: Hartford Life Group Insurance Company

You are hereby summoned and required to serve upon Jonathan M. Feigenbaum, Esq. Phillips & Angley

plaintiff's attorney, whose address is One Bowdoin Square, Boston, MA 02114 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** Esquire, at Boston, the ___tenth___ day of August _____, in the year of our Lord two thousand _and Five_ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED.
   (1) TORT    (2) MOTOR VEHICLE TORT    (3) CONTRACT    (4) EQUITABLE RELIEF    (5) OTHER

FORM. CIV.P. 1 3rd Rev.

**I HEREBY ATTEST AND CERTIFY ON**

SEPT. 15, 2005 , **THAT THE**

**FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

BY: _____

ASSISTANT CLERK.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.