**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| JOYCE CHRISTIE | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| HARTFORD LIFE GROUP INSURANCE | ) |
| COMPANY f/k/a CNA GROUP | ) |
| LIFE ASSURANCE COMPANY | ) |
| Defendant. | ) |

Civil Action No. 05-11830 NMG

_____)

**DEFENDANT'S MOTION FOR AN EXAMINATION OF PLAINTIFF**

The Defendant, Hartford Life Group Insurance Company ("Defendant"), hereby moves

this Court, pursuant to Rule 35 of the Federal Rules of Civil Procedure, to order an examination

of the Plaintiff, Joyce Christie.  Defendant specifically requests that this Court order Plaintiff to

submit to an examination by Dr. Walter Panis of Spaulding Rehabilitation Hospital, Physical

Medicine & Rehabilitation Department, 125 Nashua Street, Boston, Massachusetts 02114 on

September 16, 2006 at 10:00am[1] for the purpose of determining the exact nature and extent of

her alleged disability, restrictions, functionality, and work capacity.

**FACTS**

1.  Plaintiff filed this action seeking long-term disability benefits under a disability policy issued

    by CNA Group Life Assurance Company to the Commonwealth of Massachusetts ("Policy"

    or "Plan").  <u>Complaint</u> at ¶ 6 and P. 7.  A copy of the Policy is attached hereto at Exhibit A.

2.  Plaintiff was employed as an Assistant Housing Manager (Floater) by the Fall River Housing

    Authority, an instrumentality of the Commonwealth of Massachusetts, and was a participant

    in the Plan.  <u>Complaint</u> at ¶ 5.

---

[1] Or some other date and time convenient for Dr. Panis.

3.  The Policy provides for benefits payable for the first twenty-four months if the Plaintiff is disabled from her own occupation.  Policy at 6.  Plaintiff claims that she was and is disabled from performing her own occupation.  Complaint at ¶ 10.

4.  After twenty-four months, benefits are payable only if the Plaintiff is disabled from any occupation.  Policy at 6.  Plaintiff claims she is disabled from any occupation because she seeks ongoing disability benefits beyond the own occupation period.  Complaint at 7.

5.  Plaintiff claims to be suffering from bulging and herniated discs and lumbar sacral damage, as well as, pain in her back, hips and right leg.  Plaintiff's Responses to Defendant's First Set of Interrogatories, attached hereto as Exhibit B, at 4.

6.  By letter dated August 9, 2006, Defendant's counsel requested that Plaintiff's counsel agree to an exam of Plaintiff by Walter Panis, M.D.  See Exhibit C, attached hereto.

7.  Walter Panis, M.D. is the Attending Physiatrist and Consulting Neurologist at Spaulding Rehabilitation Hospital in Boston, Massachusetts and the Medical Director of the Occupational Medicine Center at New England Baptist Hospital in Boston, Massachusetts where a large part of his practice involves treating patients with back problems.  Curriculum Vitae of Dr. Panis, attached hereto at Exhibit D, at 2.

8.  Dr. Panis is a registered physician in Massachusetts, as well as board certified in both Psychiatry and Neurology and in Physical Medicine and Rehabilitation.  Curriculum Vitae of Dr. Panis at 1.

9.  By letter dated August 14, 2006, Plaintiff's counsel refused to assent to a medical examination by Walter Panis, M.D. because he "is aware of Dr. Panis' retention by a number of insurance carriers."  See Exhibit E, attached hereto.

2

## ARGUMENT

As discussed below: (1) Defendant is entitled to obtain an examination of Plaintiff because she has placed her disability in controversy by filing this action; (2) Dr. Panis is clearly qualified to perform the examination; and, (3) Plaintiff's objection to an examination by Dr. Panis due to the fact that Plaintiff's counsel, "is aware of Dr. Panis' retention by a number of insurance carriers," is not a "valid" objection.

First, Defendant is entitled to obtain an examination of Plaintiff because Plaintiff has placed her disability in controversy. Rule 35(a) of the <u>Federal Rules of Civil Procedure</u> ("Rule"). Plaintiff is seeking long-term disability benefits under a Policy that provides benefits for the first twenty-four months if the Plaintiff is disabled from her own occupation and benefits thereafter if the Plaintiff is disabled from any occupation. <u>Facts</u> at ¶ 1, 3, 4.[2] Plaintiff claims to be disabled from her own occupation, as well as, from any occupation. <u>Facts</u> at ¶ 3, 4. In order to defend this action, Defendant is entitled to obtain evidence of Plaintiff's true physical condition, any restrictions she may have, as well as the extent of her functionality and work capacity. See <u>Rule</u> 35(a).

Second, Walter Panis, M.D. is clearly qualified to perform the examination. Plaintiff claims to be suffering from bulging and herniated discs and lumbar sacral damage, as well as, pain in her back, hips and right leg. <u>Facts</u> at ¶ 5. Dr. Panis is the Attending Physiatrist and Consulting Neurologist at Spaulding Rehabilitation Hospital in Boston, Massachusetts and the Medical Director of the Occupational Medicine Center at New England Baptist Hospital in Boston, Massachusetts where a large part of his practice involves treating patients with back problems. <u>Facts</u> at ¶ 7. He is a registered physician in Massachusetts and is board certified in

---

[2] All cites to "Facts" are references to the numbered paragraphs set forth in the Facts section of this Motion at P. 1-2.

both Psychiatry and Neurology, and Physical Medicine and Rehabilitation.  Facts at ¶ 8.  Dr.

Panis is very well qualified to perform the examination of Plaintiff in this action.

Third, Plaintiff's objection to an examination by Dr. Panis because Plaintiff's counsel "is

aware of Dr. Panis' retention by a number of insurance carriers," is not a "valid objection."

Looney v. National Railroad Passenger Corporation, 142 F.R.D. 264, 265 (D. Mass. 1992).

Defendant requested that Plaintiff submit to a medical exam by Dr. Panis.  Facts at ¶ 6.  Despite

Dr. Panis' qualifications, Plaintiff's counsel has refused to assent to an exam by Dr. Panis based

on the fact that Plaintiff's counsel "is aware of Dr. Panis' retention by a number of insurance

carriers."  Facts at ¶ 9.  Plaintiff's objection suggests bias on the part of Dr. Panis.  As explained

in Looney, alleged bias is insufficient to constitute a valid objection to an examination by Dr.

Panis.  Looney, 142 F.R.D. at 265.  Moreover, the alleged bias goes to the weight the fact finder

should give to Dr. Panis' opinion at trial, not to whether or not Dr. Panis may perform the

examination.  Looney, 142 F.R.D. at 265 (finding Plaintiff's allegations of bias and prejudice to

be improper objections to defendant's proposed doctor and noting that Plaintiff could raise her

allegations of bias to the jury at trial).  Consequently, this Court must order the examination of

Plaintiff by Dr. Panis.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court order the

Plaintiff to appear at 10:00am on September 15, 2006 at the offices of Walter Panis, M.D.,

Spaulding Rehabilitation Hospital, PM&R Department, 125 Nashua Street, Boston,

Massachusetts 02114 for an examination that shall consist of a physical examination together

with such tests as Dr. Panis may deem medically appropriate to permit him to reach a reasoned

conclusion regarding the exact nature and extent of her alleged disability, restrictions,

functionality, and work capacity.[3]  Defendant further requests that the Plaintiff's attorney be

prohibited from being present at the examination.

Respectfully Submitted,

Defendant Hartford Life Group Insurance
Company,


/s/Katherine R. Parsons
David B. Crevier, BBO # 557242
Katherine R. Parsons, BBO # 657280
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115
Tel:  413-787-2400
Fax:  413-781-8235
Emails:  dcrevier@crevierandryan.com
         kparsons@crevierandryan.com


## LOCAL RULE 7.1 CERTIFICATION

I certify that the attorneys in this case have conferred and attempted in good faith to
resolve or narrow the issues contained in this motion.

/s/Katherine R. Parsons


## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF) on this 21st day of
August, 2006.

/s/Katherine R. Parsons

---

[3] A proposed order is attached hereto at Exhibit F.

# Exhibit A

# Continental Casualty Company

**CNA** INSURANCE IN TOUCH WITH BUSINESS

CNA Plaza
Chicago, Illinois 60685        A Stock Company

## Having issued Group Policy No. SR-83130411

### to

## Commonwealth of Massachusetts Group Insurance Commission

**(herein called the Employer)**

### CERTIFICATE OF INSURANCE

CERTIFIES that *You* are insured provided that *You* qualify under the *ELIGIBILITY* provision, become insured and remain insured in accordance with the terms of the Policy.   *Your* insurance is subject to all the definitions, limitations and conditions of the Policy.   It takes effect on the effective date indicated in the *EFFECTIVE DATE* provision.  This certificate, however, is not the Policy.  It is merely evidence of insurance provided under the Policy. The Policy can be amended by mutual consent between the Employer and *Us*.

This certificate replaces and cancels any other certificate previously issued to *You* under the Policy.
CDI-1AA

Signed for the Continental Casualty Company

*Bernard L. Hengelbough*
Chairman of the Board

### Long Term Disability Certificate

SBDI-C

# TABLE OF CONTENTS

**PROVISION**                                                            **PAGE**

*Schedule Of Benefits* ........................................................................................................................... 3

*Eligibility And Effective Dates* ............................................................................................................. 5

*Long Term Disability Benefits* .............................................................................................................. 6

*Exclusions And Limitations* ............................................................................................................... 10

*Termination Of Coverage* .................................................................................................................. 10

*Supplemental Benefits And Services* ................................................................................................ 11

      *Survivor Income Benefit* ............................................................................................................. 11

      *Catastrophic Disability Benefit.* ................................................................................................. 11

      *Caregiver Respite Benefit* ........................................................................................................... 12

      *Caregiver Training Benefit.* .......................................................................................................... 13

      *Emergency Alert System Benefit* ................................................................................................ 13

*Claim Services* .................................................................................................................................... 13

*Filing A Claim* ..................................................................................................................................... 14

*Uniform Provisions* ............................................................................................................................. 16

*Definitions.* ......................................................................................................................................... 18

Note: All terms in *italics* are listed and defined in the Definitions section or within the certificate itself.
CDI-3AA

## *SCHEDULE OF BENEFITS*

### Effective as of:  July 1, 2002

| | |
|---|---|
| **Employer:** | Commonwealth of Massachusetts Group Insurance Commission |
| **Policy Number:** | SR-83130411 |
| **Policy Effective Date:** | July 1, 2002 |
| **Eligibility:** | All *Actively at Work* full-time and half-time employees working in the United States of America who work at least 18 ¾ hours in a 37 ½ hour work week or 20 hours in a 40 hour work week and who have completed the waiting period required by the Employer. |
| | Seasonal and temporary employees are not eligible except as defined by the policyholder. |
| **Waiting Period:** | For employees in an eligible group on or before the Policy Effective Date: The lessor of two full calendar months or 60 Days of continuous active, full-time employment |
| | For employees entering an eligible group after the Policy Effective Date: The lessor of two full calendar months or 60 Days of continuous active, full-time employment |
| **Elimination Period:** | 90 Days<br>180 Days with respect to the Catastrophic Disability Benefit |
| **LTD Monthly Benefit:** | 50% of *Monthly Earnings* to a maximum benefit of $10,000 per month subject to reduction by deductible sources of income or *Disability Earnings*. |
| **Social Security Offset Method:** | Family Social Security |
| **Employer Contribution:** | 0% of premium |

| **Maximum Period Payable:** | Age on Date Disability Commences | Maximum Period Payable |
|---|---|---|
| | Age 61 or younger | To *Your* 65th birthday |
| | Age 62 | 42 months |
| | Age 63 | 36 months |
| | Age 64 | 30 months |
| | Age 65 | 24 months |
| | Age 66 | 21 months |
| | Age 67 | 18 months |
| | Age 68 | 15 months |
| | Age 69 or older | 12 months |
| **Maximum Period Payable:** | Catastrophic Disability Benefit | 12 Months |

# *OTHER FEATURES*

The following other features are included:

- Waiver of Premium
- Work Incentive Benefit
- Minimum Benefit
- Recurrent Disability
- FMLA Coverage Extension
- Survivor Benefit
- Worksite Modification Benefit
- Vocational Rehabilitation Service
- Social Security Assistance
- Catastrophic Disability Benefit
  - Caregiver Respite Benefit
  - Caregiver Training Benefit
  - Emergency Alert System Benefit
- Continuity of Coverage

**THIS SCHEDULE OF BENEFITS CANCELS AND REPLACES ALL OTHER SCHEDULES PREVIOUSLY ISSUED TO *YOU* UNDER THE POLICY. IT OUTLINES THE POLICY FEATURES. THE FOLLOWING PAGES PROVIDE A COMPLETE DESCRIPTION OF THE PROVISIONS OF *YOUR* CERTIFICATE.**
SOBC

# ELIGIBILITY AND EFFECTIVE DATES

### Are You eligible for this insurance?

All *Actively at Work* full-time and half-time employees working in the United States of America who work at least 18 ¾ hours in a 37 ½ hour work week or 20 hours in a 40 hour work week and who have completed the waiting period required by the Employer.

Seasonal and temporary employees are not eligible except as defined by the policyholder.

The waiting period is stated in the *Schedule of Benefits*.
CDI-4AA

### When does Your insurance become effective?

If *You* enroll on or before the Policy Effective Date, *Your* insurance shall take effect on such Date. If *You* enroll after the Policy Effective Date but within 31 days of becoming eligible, *Your* insurance will take effect on the first of the month that falls on or next follows the date the signed enrollment form is received by *Your* Employer.

If *You* enroll more than 31 days after becoming eligible, *Your* insurance will take effect after *We* approve such Evidence of Insurability as *We* may require. The GIC will notify *You* of *Your* effective date.

If, because of *Injury* or *Sickness*, *You* are eligible but not *Actively at Work* on the date the insurance would otherwise take effect, it will take effect on the day *You* return to *Active Work* for one full day.
CDI-5AA

### Evidence of Insurability

If *You* are required to submit Evidence of Insurability, *You* must:

1) Complete and sign a health and medical history form provided by *Us;*
2) Submit to a medical examination, if requested;
3) Submit verification of *Monthly Earnings*;
4) Provide any additional information and attending physicians' statements that *We* require; and
5) Furnish all such evidence at *Your* own expense.
CDI-47AA

### Who pays for Your coverage?

*You* pay the entire cost of *Your* coverage.
CDI-6AA

### Is premium payable while You receive benefits?

*We* will waive premium for *You* during a period of *Disability* for which the *LTD Monthly Benefit* is payable under the policy. Premium payment is required during *Your Elimination Period* or any other period when the *LTD Monthly Benefit* is not payable under the policy.
CDI-45AA

### What happens if We are replacing an existing contract?

**Effect on *Actively at Work* Provision**

If *You* were insured under the Prior Policy on the day before the effective date of the policy, *You* may be covered by the policy even if *You* fail to satisfy the *Actively at Work* requirement as stated in the *Are You eligible for this insurance?* provision. *You* will receive credit for time covered under the Prior Policy. This credit will be applied toward satisfaction of service waiting periods, *E limination P eriods* o r a ny o ther p eriods o f t he s ame o r s imilar provisions under the policy.

**Effect on Benefits**

If *You* do not satisfy the *Actively at Work* requirement, *You* may still be eligible for benefits under the policy as follows:

The benefits payable under the policy will be the benefit which would have been payable under the terms of the P rior P olicy if it had remained in force. The benefits payable under the policy will be reduced by any benefits paid under the Prior Policy for the same *Disability*.

Benefits will end on the earliest of the following:

    1) the date that benefits would terminate in accordance with the provisions of the policy; or

    2) the date that benefits would terminate under the Prior Policy if it had remained in force.

The Prior Policy is the group disability insurance policy issued to the Employer by The Hartford whose coverage terminated as of the Effective Date of the policy.
CDI-7AA

## Effect on Pre-existing Conditions

*You* will receive credit toward satisfaction of the *Pre-existing Condition* time periods under the policy for the time *You* were covered under the Prior Policy. If, after applying the time covered under the Prior Policy, *Your Disability* is due to a *Pre-existing Condition*, benefits shall be the lesser of:

    1) the benefits payable under the policy; or

    2) the benefits that would have been payable under the Prior Policy if it had remained in force, taking into account the *Pre-existing Condition* provision, if any, of the Prior Policy.
CDI-8AA

# LONG TERM DISABILITY BENEFITS

## How do We define Disability?

*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.
CDI-9AA

### Occupation Qualifier

*Disability* means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

    1) continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and

    2) not *Gainfully Employed*.
CDI-10AB

After the *LTD Monthly Benefit* has been payable for 24 months, *Disability* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

    1) continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and

    2) not Gainfully Employed.
CDI-11AB

### Earnings Qualifier

*You* may be considered *Disabled* during and after the *Elimination Period* in any Month in which *You* are *Gainfully Employed*, if an *Injury* or *Sickness* is causing physical or mental impairment to such a degree of severity that *You* are unable to earn more than 80% of *Your Monthly Earnings* in any occupation for which *You* are qualified by education, training or experience. On each anniversary of *Your Disability*, *We* will increase the *Monthly Earnings* by the lesser of the current annual percentage increase in *CPI-W*, or 10%.

*You* are not considered to be *Disabled* if *You* are able to earn more than 80% of *Your Monthly Earnings*. Salary, wages, partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income *You* receive or are entitled to receive will be included. Sick pay and salary continuance payments will not be included. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.
CDI-13AB

### Loss of Professional License or Certification

If *You* require a professional license or certification for *Your* occupation, loss of that professional license or certification does not in and of itself constitute *Disability* under the Occupation Qualifier or the Earnings Qualifier.
CDI-14AA

### What is the Elimination Period and how is it satisfied?

The *Elimination Period* begins on the day *You* become *Disabled*. It is a period of continuous *Disability* which must be satisfied before *You* are eligible to receive benefits from *Us*. *You* must be continuously *Disabled* through *Your Elimination Period*.

If *You* temporarily recover and return to work, *We* will treat *Your Disability* as continuous if *You* return to work for a period of less than one-half the *Elimination Period* as shown in the *Schedule of Benefits* not to exceed 90 days. The days that *You* are not *Disabled* will not count toward *Your Elimination Period*.

Any increases *You* receive in *Monthly Earnings* during *Your* return to work period will not be taken into consideration when calculating *Your LTD Monthly Benefit*.

If *You* return to work for a period greater than one-half the *Elimination Period*, or 90 days, whichever is less, and become *Disabled* again, *You* will have to begin a new *Elimination Period*.

### Can You satisfy Your Elimination Period if You are working?

*You* can satisfy *Your Elimination Period* if *You* are working, provided *You* meet the definition of *Disability*.
CDI-15AA

### What Disability Benefit are You eligible to receive?

If *You* are *Disabled*, *You* are eligible to receive one of the following at any given time:

    1) an *LTD Monthly Benefit*; or

    2) a Work Incentive Benefit.

While *You* are *Disabled*, *You* might be eligible to receive one or the other of the above, but *You* cannot receive more than one of these benefits at the same time.
CDI-16AA

### What is Your LTD Monthly Benefit and how is it calculated?

*Your LTD Monthly Benefit* will be based on *Your Monthly Earnings* as reported to *Us* by *Your* employer and for which premium has been paid.

An *LTD Monthly Benefit* will be provided after the end of the *Elimination Period* if *You* are *Disabled* according to the *Occupation Qualifier* provision.

*We* will calculate *Your Gross LTD Monthly Benefit* amount as follows:

    1) Multiply *Your Monthly Earnings* by 50%.

    2) The maximum *Gross LTD Monthly Benefit* is $10,000.

    3) Compare the answers from Item 1 and Item 2. The lesser of these two amounts is *Your Gross LTD Monthly Benefit*.

    4) Subtract the Deductible Sources of Income from *Your Gross LTD Monthly Benefit*. The resulting figure is *Your Net LTD Monthly Benefit*.

If a benefit is payable for less than one month, it will be paid on the basis of 1/30[th] of the *Net LTD Monthly Benefit* for each day of *Disability*.
CDI-17AB

### *How do We define Earnings?*

*Monthly Earnings* equals the Monthly wage or salary that *You* were receiving from *Your* employer on the *Date of Disability*. It includes:

1) employee contributions made through a salary reduction agreement with *Your* employer to an IRC Section 401(k), 403(b), 501(c)(3), 457 deferred compensation plan, or any other qualified or non-qualified employee *Retirement Plan* or deferred compensation arrangement; and

2) amounts contributed to *Your* fringe benefits according to a salary reduction arrangement under an IRC Section 125 plan.

It does not include:

1) commissions;

2) bonuses;

3) overtime pay;

4) *Your* employer's contribution on *Your* behalf to a *Retirement Plan* or deferred compensation arrangement; or any other extra compensation.

CDI-19AA

### *What are the Deductible Sources of Income?*

1) *Disability* benefits paid, payable, or for which there is a right under:

    a) The Social Security Act, including any amounts for which *Your* dependents may qualify because of *Your Disability*;

    b) Any Workers Compensation or Occupational Disease Act or Law, or any other law which provides compensation for an occupational *Injury* or *Sickness*;

    c) Occupational accident coverage provided by or through the Employer;

    d) Any Statutory Disability Benefit Law;

    e) The Railroad Retirement Act;

    f) The Canada Pension Plan, Quebec Pension Plan, or any other similar disability or pension plan or act;

    g) The Canada Old Age Security Act;

    h) Any Public Employee Retirement System Plan, or any State Teachers' Retirement System Plan, or any plan provided as an alternative to any of the above acts or plans.

2) *Disability* benefits paid under:

    a) Any group insurance plan provided by or through the Employer, and

    b) Any sick leave or salary continuance plan provided by or through the Employer.

3) Retirement benefits paid under the Social Security Act including any amounts for which *Your* dependents may qualify because of *Your* retirement;

4) Retirement and *Disability* benefits paid under a Retirement Plan provided by the Employer except for amounts attributable to *Your* contributions;

5) *Disability* benefits paid under any No Fault Auto Motor Vehicle coverage.

### Proration of Lump Sum Awards

If any benefit described above is paid in a single sum through compromise settlement or as an advance on future liability, *We* will determine the amount of reduction to *Your Gross LTD Monthly Benefit* as follows:

1) *We* will divide the amount paid by the number of months for which the settlement or advance was provided; or

2) If the number of months for which the settlement or advance is made is not known, *We* will divide the amount of the settlement or advance by the expected remaining number of months for which *We* will provide benefits for *Your Disability* based on the Proof of *Disability* which *We* have, subject to a maximum of 60 months.

CDI-20AB

### What other sources of income are not deductible?

*We* will not reduce *Your Gross LTD Monthly Benefit* by any of the following:

1) deferred compensation arrangements such as 401(k), 403(b) or 457 plans;
2) credit *Disability* insurance;
3) pension plans for partners;
4) military pension and *Disability* income plans;
5) franchise *Disability* income plans;
6) individual *Disability* income plans;
7) a *Retirement Plan* from another *Employer*;
8) profit sharing plans;
9) thrift or savings plans;
10) individual retirement account (IRA);
11) tax sheltered annuity (TSA);
12) stock ownership plan.

CDI-21AB

### Can You work and still receive benefits?

While *Disabled, You* may qualify for the Work Incentive Benefit.

CDI-22AA

**Work Incentive Benefit**

A Work Incentive Benefit will be provided if *You* are *Disabled* and *Gainfully Employed* after the end of the *Elimination Period*, or after a period during which *You* received *LTD Monthly Benefits*.

The Work Incentive Benefit will be calculated during the first 24 months of *Gainful Employment* as follows:

1) The *Net LTD Monthly Benefit* amount and *Disability Earnings* amount will be added together and compared to *Monthly Earnings*.
2) If the total amount in Item 1 exceeds 100% of *Monthly Earnings*, the Work Incentive Benefit amount will be equal to the *Net LTD Monthly Benefit* reduced by the amount of the excess.
3) If the total amount in Item 1 does not exceed 100% of *Monthly Earnings*, the Work Incentive Benefit will be equal to the *Net LTD Monthly Benefit* amount.

After the first 24 months of *Gainful Employment*, the Work Incentive Benefit will be equal to the *Net LTD Monthly Benefit* amount less 50% of *Disability Earnings*.

The Work Incentive Benefit will cease on the earliest of the following:

1) the date *You* are no longer *Disabled;* or
2) the end of the *Maximum Period Payable*.

CDI-23AB

### What is the Minimum Net LTD Monthly Benefit payable under this program?

The *Net LTD Monthly Benefit* payable for *Disability* will not be less than $100 or 10% of *Your Gross LTD Monthly Benefit*, whichever is greater.   The Minimum *Net LTD Monthly Benefit* does not apply if *You* are *Gainfully Employed*.

CDI-25AB

### What happens if Your other benefits increase?

The *Net LTD Monthly Benefit* will not be further reduced for subsequent cost-of-living increases which are paid, payable, or for which there is a right under any Deductible Source of Income shown above.

CDI-26AB

### How long will You receive benefits under this program?

*We* will send *You* a payment for each month of *Disability* up to the *Maximum Period Payable* as shown in the *Schedule of Benefits*.  Payment of benefits are also subject to any benefit duration limitation pertaining to *Your Disability*.

CDI-27AB

### What happens if Your Disability recurs?

If *Disability* for which benefits were payable ends but recurs due to the same or related causes less than 6 months after the end of a prior *Disability*, it will be considered a resumption of the prior *Disability*. Such recurrent *Disability* shall be subject to the provisions of the policy that were in effect at the time the prior *Disability* began.

*Disability* which recurs more than 6 months after the end of a prior *Disability* are subject to:

1) a new *Elimination Period*;
2) a new *Maximum Period Payable*; and
3) the other provisions of the policy that are in effect on the date the *Disability* recurs.

*Disability* must recur while *Your* coverage is in force under the policy.
CDI-28AA

# EXCLUSIONS AND LIMITATIONS

### What are the exclusions and limitations under this program?

The policy does not cover any loss caused by, contributed to, or resulting from:
CDIX-1AA

- declared or undeclared war or an act of either;
CDIX-2AA

- a *Pre-existing Condition*;
CDIX-4AA

- attempted suicide, while sane or insane, or intentional self-inflicted *Injury* or *Sickness*;
CDIX-5AA

- commission of or attempt to commit an act which is a felony in the jurisdiction in which the act occurred;
CDIX-6AA

- *Disability* beyond 12 months after the *Elimination Period* if it is due to a *Mental Disorder* of any type, unless confined in a *Hospital* or institution licensed to provide care and treatment for mental illness or psychiatric residential treatment or enrolled in a partial hospital or day treatment for at least 5 hours per day and at least 4 days per week.

Subject to approval by the Commonwealth of Massachusetts Insurance Department
CDIX-3AA(GIC)

- Substance Abuse (drug or alcohol) related *Disability* unless *You* are participating in a substance abuse treatment program approved by the State. The cost of the treatment program must be borne by *You*, or another group plan of *Your* Employer (such as a group health plan or Employee Assistance Program) if one is available and covers this type of treatment. In no event will *LTD Monthly Benefits* for Substance Abuse be paid beyond the earliest of the date:

  1) 12 *LTD Monthly Benefit* payments have been made; or
  2) the *Maximum Period Payable* is reached; or
  3) *You* refuse to participate in an appropriate, available treatment program, or *You* leave the treatment program prior to completion; or
  4) *You* are no longer following the requirements of *Your* treatment plan under the program; or
  5) *You* complete the initial treatment plan, exclusive of any aftercare or follow-up services.
CDIX-29AB

Benefits are not payable for any period during which *You* are confined to a penal or correctional institution if the period of confinement exceeds 30 days.
CDIX-12AA

# TERMINATION OF COVERAGE

### When will Your insurance terminate?

*Your* coverage will terminate on the earliest of the following dates:

1) the date on which the policy is terminated;

2) the date at the end of the period for which premium has been paid if the Employer fails to pay the required premium for *You* within 31 days after the premium due date, except for an inadvertent error; or

3) the date *You*:

    a) are no longer a member of a class eligible for this insurance,

    b) withdraw from the program,

    c) are retired or pensioned, or

    d) cease work because of an unapproved leave of absence, furlough, layoff, or temporary work stoppage due to a labor dispute, however, *We* will extend coverage for a leave of absence approved by the Employer, subject to continued payment of premium, for a period not to exceed 12 months. If premium is inadvertently paid beyond the 12-month extension of coverage, *We* will make an adjustment to the next required premium payment and the Employer will provide a refund of any overpaid premium to *You*. Orders to active military service for 2 months or less will be covered subject to continued payment of premium.

Termination will not affect a covered loss which began before the date of termination.
CDI-30AB

### Will coverage be continued if *You* are eligible for leave under FMLA?

In the event *You* are eligible for and *Your* Employer approves a leave under the Family and Medical Leave Act of 1993 (FMLA), *Your* insurance will continue for a period of up to 12 weeks following the date the leave begins, provided the required premium continues to be paid.

*You* are eligible for leave under this Act in order to provide care:

    1) After the birth of a child; or

    2) After the legal adoption of a child; or

    3) After the placement of a foster child in *Your* home; or

    4) To a *Spouse*, child or parent due to their serious illness; or

    5) For *Your* own serious health condition.

While granted a Family or Medical Leave of Absence:

    1) The Employer will pay the required premium according to the terms of the policy; and

    2) Coverage will terminate if *You* do not return to work as scheduled according to the terms of *Your* agreement with the Employer.
CDI-31AB

# SUPPLEMENTAL BENEFITS AND SERVICES

## SURVIVOR INCOME BENEFIT

### What happens if *You* die while receiving benefits?

If *You* die after satisfying the waiting period or after having received a benefit provided by the policy and during a period for which benefits are payable, *We* will pay a Survivor Income Benefit. This benefit is equal to the amount *You* were last entitled to receive for the month preceding death.

The Survivor Income Benefit shall be payable on a monthly basis immediately after *We* receive written proof of *Your* death. It is payable for 3 months. The benefit shall accrue from *Your* date of death.

This benefit is payable to the beneficiary, if any, named by *You* under the policy. If no such beneficiary exists, the benefit will be payable in accordance with the *Time and Payment of Claim* provision.
CDI-33AB

## CATASTROPHIC DISABILITY BENEFIT

### When will *You* be eligible to receive a Catastrophic Disability Benefit?

*We* will pay a monthly *Catastrophic Disability* Benefit to *You* if *You* are receiving *LTD Monthly Benefits* (or Presumptive Disability Benefits) and *We* receive proof that *You* are *Catastrophically Disabled*. Catastrophic

*Disability* Benefits will begin at the end of the *Catastrophic Disability Elimination Period* shown in the *Schedule of Benefits.*

*You* are *Catastrophically Disabled* when *We* determine that, due to *Sickness* or *Injury:*

1) *You* are unable to perform, without human assistance or regular supervision from another person, at least 2 of the 6 *Activities of Daily Living;* or
2) a deterioration in *Your* intellectual capacity which requires substantial supervision of *You* by another person because *You* engage in behavior which poses a health or safety hazard to *You* or to others; and
3) *You* are not *Gainfully Employed.*

### When will Your coverage become effective?

*You* will become insured for *Catastrophic Disability* Benefit coverage on *Your* effective date under the *LTD* plan.

However, the *Catastrophic Disability* Benefit coverage will be delayed if, on *Your* effective date, *You* cannot safely and completely perform one or more of the *Activities of Daily Living* without another person's assistance, or verbal cueing, or *You* have a deterioration or loss in intellectual capacity and need another person's assistance or verbal cueing for *Your* protection, or for the protection of others.  Coverage will begin on the date *You* can safely and completely perform all of the *Activities of Daily Living* without another person's assistance or verbal cueing, or no longer have a deterioration or loss in intellectual capacity, and do not need another person's assistance or verbal cueing for *Your* protection, or for the protection of others.

### How much will We pay if You are Disabled?

The *Catastrophic Disability* Benefit is 10% of *Monthly Earnings* to a maximum *Catastrophic Disability* Benefit of the lesser of the *LTD* plan maximum *Monthly Benefit* or $5,000.

This benefit is not subject to policy provisions which would otherwise increase or reduce the benefit amount such as Deductible Sources of Income.

### When will Your Catastrophic Disability Benefits end?

*Catastrophic Disability* Benefit payments will end on the earliest of the following dates:

1) the date *You* are no longer *Catastrophically Disabled;*
2) the date *You* become ineligible for *LTD Monthly Benefit* payments; or
3) the end of the *Catastrophic Disability Maximum Period Payable* shown in the *Schedule of Benefits.*

### What claim information is needed for Catastrophic Disability Benefits?

The Claim Filing Requirements section under the policy applies to *Catastrophic Disability* Benefit coverage.  *We* may also require an interview with *You.*
CDIO-5AB

## CAREGIVER RESPITE BENEFIT

*We* will pay *You* a Caregiver Respite Benefit for each day of a Respite Interval, subject to the conditions below:

1) *You* must be receiving a Catastrophic Disability Benefit;
2) The Benefit is payable if Informal Home Care has been provided for at least 6 continuous months for *You* beginning with *Your Date of Disability;*
3) The Benefit is payable for Companion Care received by *You* in *Your* home or a private residence during a Respite Interval;
4) The Benefit is equal to the daily Companion Care cost incurred, not to exceed $100 per day; and
5) The Benefit is payable to *You* following submission of proof of *Your* incurred costs for Companion Care during the Respite Interval.

*Companion Care* means medically necessary custodial care furnished during a Respite Interval for a minimum of 8 hours per day by a Home Health Care Provider accredited by either the Joint Commission on Accreditation of Health Care Organizations or Community Health Accreditation Program.

*Informal Caregiver* means the person who has primary responsibility of providing Informal Home Care for *You.* A person who is paid for caring for *You* cannot be an Informal Caregiver.

*Informal Home Care* means medically necessary custodial care provided at *Your* home or a private residence by an Informal Caregiver. Such care is provided in lieu of confinement in a nursing home, or care received at *Your* home from a paid provider.

*Respite Interval* means a period of one or more consecutive days during which the Informal Caregiver is temporarily relieved of the Informal Home Care duties. Two Respite Intervals are permitted per calendar year, subject to a cumulative total of 14 days per calendar year. Unused days expire on December 31 and cannot be carried over into any future calendar year.

CDIO-6AA

# CAREGIVER TRAINING BENEFIT

*We* will pay *You* a Caregiver Training Benefit if an Informal Caregiver incurs an expense to be trained to provide Informal Home Care for *You*, subject to the conditions below:

1) *You* must be receiving a *Catastrophic Disability Benefit*;

2) Caregiver Training must by provided by a Home Health Care Provider accredited by either the Joint Commission on Accreditation of Health Care Organizations or Community Health Accreditation Program, by a Nursing Home or by a *Hospital* while *You* are receiving the Catastrophic Disability Benefit. If *You* are in a Nursing Home or in a *Hospital*, the Caregiver Training Benefit will only be payable if the training will make it possible for *You* to return to *Your* residence where *You* can be cared for by the Informal Caregiver;

3) The amount of the Benefit is the cost incurred for the Caregiver Training, subject to $500 maximum per period of *Disability*;

4) The Benefit is payable to *You* following submission to *Us* of proof of *Your* costs incurred for Caregiver Training.

*Caregiver Training* means training received by the Informal Caregiver to care for *You* in *Your* residence.

*Informal Caregiver* means the person who has primary responsibility of providing Informal Home Care for *You*. A person who is paid for caring for *You* cannot be an Informal Caregiver.

*Informal Home Care* means medically necessary custodial care provided at *Your* home or a private residence by an Informal Caregiver. Such care is provided in lieu of confinement in a nursing home, or care received at *Your* home from a paid provider.

CDIO-7AA

# EMERGENCY ALERT SYSTEM BENEFIT

*We* will pay *You* an Emergency Alert System Benefit for the actual cost to rent or lease an emergency alert system which will allow *You* to remain in *Your* residence alone, subject to the conditions below:

1) *You* must be receiving a *Catastrophic Disability* Benefit;

2) The Benefit is payable for a medically necessary emergency alert system, which is a communication system located in *Your* residence, that is used to summon medical attention in case of a medical emergency;

3) *Your* condition must be such that *You* could not be left alone were it not for the presence of the emergency alert system;

4) The Benefit is equal to the lesser of $25 per month or the actual cost to rent or lease the emergency alert system;

5) The Benefit is payable to *You*, in arrears, after every 6 months, following submission of proof of *Your* incurred costs for the emergency alert system; and

6) *We* will not pay for any charges incurred as a result of installing, servicing, or maintaining the Emergency Alert System. This includes, but is not limited to, charges for normal telephone service while the system is installed or for a home security system.

CDIO-8BA

# CLAIM SERVICES

### What other services are available to You while You are Disabled?

If *You* are *Disabled* and eligible to receive *Disability* benefits under the policy, *We* will evaluate *You* for eligibility to receive any of the following. *We* will make the final determination for any of the following benefits or services.

### Worksite Modification Benefit

*We* will assist *You* and *Your* employer in identifying modifications *We* agree are likely to help *You* remain at work or return to work. This agreement will be in writing and must be signed by *You*, *Your* employer and *Us*.

When this occurs, *We* will reimburse *Your* Employer for the cost of the modification, up to the greater of:

1) $1500.00 or
2) 2 months of *Your Net LTD Monthly Benefit*.

### Vocational Rehabilitation Service

Rehabilitation services are available when *We* determine that these services are reasonably required to assist in returning *You* to *Gainful Employment*. Vocational rehabilitation services might include one or more of the following:

1) job modification;
2) job retraining;
3) job placement;
4) other activities.

Eligibility for Vocational Rehabilitation Services is based upon *Your* education, training, work experience and physical and/or mental capacity. To be considered for rehabilitation services:

1) *Your* Disability must prevent *You* from performing *Your Regular Occupation*;
2) *You* must have the physical and/or mental capacities necessary for successful completion of a rehabilitation program, and
3) There must be a reasonable expectation that rehabilitation services will help *You* return to *Gainful Employment*.

### Social Security Assistance

When necessary, *We* will provide an advocate for *You*, in applying for and securing Social Security Disability awards. When *We* determine that Social Security Assistance is appropriate for *You*, it is provided at no additional cost to *You*.

CDI-35AB

# *FILING A CLAIM*

## *What are the Claim Filing Requirements?*

### Initial Notice of Claim

*We* ask that *You* notify *Us* of *Your* claim as soon as possible, so that *We* may make a timely decision on *Your* claim. The Employer can assist *You* with the appropriate telephone number and address of *Our* Claim Department. *You* must send *Us* written notice of *Your Disability* within 30 days of the *Date of Disability*, or as soon as reasonably possible. Notice may be sent to *Our* Claim Department, the CNA Home Office, CNA Plaza, Chicago, Illinois 60685 or given to *Our* Agent.

### Written Proof of Loss

Within 15 days of *Our* being notified in writing of *Your* claim, *We* will supply *You* with the necessary claim forms. The claim form is to be completed and signed by *You*, the Employer and *Your Doctor*. If *You* do not receive the appropriate claim forms within 15 days, then *You* will be considered to have met the requirements for written proof of loss if *We* receive written proof, which describes the occurrence, extent and nature of loss as stated in the Proof of *Disability* provision.

### Time Limit for Filing *Your* Claim

*You* must furnish *Us* with written proof of loss within 90 days after the end of *Your Elimination Period*. The length of the *Elimination Period* is stated in the *Summary of Benefits*. If it is not possible to give *Us* written proof within 90 days, the claim is not affected if the proof is given as soon as possible. However, unless *You* are legally incapacitated, written proof of loss must be given no later than 1 year after the time proof is otherwise due.

No benefits are payable for claims submitted more than 1 year after the time proof is due. However, *You* can request that benefits be paid for late claims if *You* can show that:

1) It was not reasonably possible to give written proof during the 1 year period, and
2) Proof of loss satisfactory to *Us* was given as soon as was reasonably possible.

**Proof of *Disability***

The following items, supplied at *Your* expense, must be a part of *Your* proof of loss. Failure to do so may delay, suspend or terminate *Your* benefits.

1) The date *Your Disability* began;
2) The cause of *Your Disability*;
3) The prognosis of *Your Disability*;
4) Proof that *You* are receiving *Appropriate and Regular Care* for *Your* condition from a *Doctor*, who is someone other than *You* or a member of *Your* immediate family, whose specialty or expertise is the most appropriate for *Your* disabling condition(s) according to *Generally Accepted Medical Practice*.
5) Objective medical findings which support *Your Disability*. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).
6) The extent of *Your Disability*, including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation*.
7) Appropriate documentation of *Your Monthly Earnings*. If applicable, regular monthly documentation of *Your Disability Earnings*.
8) If *You* were contributing to the premium cost, *Your* employer must supply proof of *Your* appropriate payroll deductions.
9) The name and address of any *Hospital* or *Health Care Facility* where *You* have been treated for *Your Disability*.
10) If applicable, proof of incurred costs covered under other benefits included in the policy.

**Continuing Proof of *Disability***

*You* may be asked to submit proof that *You* continue to be *Disabled* and are continuing to receive *Appropriate and Regular Care* of a *Doctor*. Requests of this nature will only be as often as *We* feel reasonably necessary. If so, this will be at *Your* expense and must be received within 30 days of *Our* request. Failure to do so may delay, suspend or terminate *Your* benefits.

**Examination**

At *Our* expense, *We* have the right to have *You* examined as often as reasonably necessary while the claim continues. Failure to comply with this examination may deny, suspend or terminate benefits, unless *We* agree *You* have a valid and acceptable reason for not complying.

**Authorization and Documentation *You* will be asked to supply**

1) *You* will be required to provide signed authorization for *Us* to obtain and release all reasonably necessary medical, financial or other non-medical information which support *Your Disability* claim. Failure to submit this information may deny, suspend or terminate *Your* benefits.
2) *You* will be required to supply proof that *You* have applied for other Deductible Income Benefits such as Workers' Compensation or Social Security *Disability* benefits, when applicable.
3) *You* will be required to notify *Us* when *You* receive or are awarded other Deductible Income Benefits. *You* must tell *Us* the nature of the income benefit, the amount received, the period to which the benefit applies, and the duration of the benefit if it is being paid in installments.

CDI-36AB

**_Time of Payment of Claim_**

As soon as *We* have all necessary substantiating documentation for *Your Disability* claim, *Your* benefit will be paid on a Monthly basis, so long as *You* continue to qualify for it.

*We* will pay benefits to *You* unless otherwise indicated. If *You* die while *Your* claim is open, any due and unpaid *Disability* benefit will be paid to *Your* named beneficiary, if any.

If there is no surviving beneficiary, payment may be made, at *Our* option, to the surviving person or persons in the first of the following classes of successive preference beneficiaries: *Your*: 1) *Spouse*; 2) children including legally adopted children; 3) parents; 4) brothers or sisters; or 5) estate.

If any benefit is payable to an estate, a minor or a person not competent to give a valid release, *We* may pay up to $1,000 to any relative or beneficiary of *Yours* whom *We* deem to be entitled to this amount. *We* will be discharged to the extent of such payment made by *Us* in good faith.
CDI-37AB

### Can you assign Your benefits?

*Your* benefits are not assignable, which means that *You* may not transfer *Your* benefits to anyone else.
CDI-38AA

### What will happen if a claim is overpaid?

A claim overpayment can occur when *You* receive a retroactive payment from a Deductible Source of Income; when *We* inadvertently make an error in the calculation of *Your* claim; or if fraud occurs.

In an overpayment situation, *We* will determine the method by which the repayment is made. *You* will be required to sign an agreement with *Us* which details the source of the overpayment, the total amount *We* will recover and the method of recovery. If *LTD Monthly Benefits* are suspended while recovery of the overpayment is being made, suspension will also apply to the *Minimum LTD Monthly Benefits* payable under the policy.

The overpayment amount equals the amount *We* paid in excess of the amount *We* should have paid under the policy.
CDI-39AA

### Subrogation – Right of Reimbursement

When any claim payment is made, *We* reserve any and all rights to subrogation and/or reimbursement to the fullest extent allowed by statute and customary practice. Any party to this contract shall not perform any act that will prejudice such rights without prior agreement with *Us*.

*We* will bear any expenses associated with *Our* pursuit of subrogation or recovery.
CDI-41AA

### Fraud

Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act which is a crime and may subject such person to criminal and civil penalties. Such penalties include, but are not limited to fines, denial or termination of insurance benefits, recovery of any amounts paid, civil damages, criminal prosecution and confinement in state prison.
CDI-42AA

## UNIFORM PROVISIONS

### Entire Contract; Changes

The policy, the Employer's application, the employee's certificate of coverage, and *Your* application, if any, and any other attached papers, form the entire contract between the parties. Coverage under the policy can be amended by mutual consent between the Employer and *Us*. No change in the policy is valid unless approved in writing by one of *Our* officers. No agent has the right to change the policy or to waive any of its provisions.

### Statements on the Application

Any statement made by the Employer or *You*, except for fraudulent misstatements, is considered a representation and not a warranty. A copy of the statement will be provided to Employer or *You*, whoever made the statement. No statement of the Employer will be used to void the policy after it has been in force for 2 years. No statement of *Yours* will be used in defense of a claim after *You* have been insured for 2 years, except for fraudulent misstatements.

### Legal Actions

No legal action of any kind may be filed against *Us*:

    1) within the 60 days after proof of *Disability* has been given; or

2) more than 3 years after proof of *Disability* must be filed, unless the law in the state where *You* live allows a longer period of time.

## Conformity with State Statutes

If any provision of the policy conflicts with the statutes of the state in which the policy was issued or delivered, it is automatically changed to meet the minimum requirements of the statute.
CDI-40AB

## General Provisions

*We* have the right to inspect all of the Employer's records on the policy at any reasonable time.  This right will extend until:

   1) 2 years after termination of the policy; or

   2) all claims under the policy have been settled,

whichever is later.

The policy is in the Employer's possession and may be inspected by *You* at any time during normal business hours at the Employer's office.

The policy is not in lieu of and does not affect any requirements for coverage by Workers' Compensation Insurance.
CDI-43AB

# DEFINITIONS

The following are key words and phrases used in this certificate. When these words and phrases, or forms of them, are used, they are capitalized and italicized in the text. As *You* read this certificate, refer back to these definitions.

**Actively at Work** or **Active Work** means that *You* must be:

1) working a t t he E mployer's u sual p lace o f b usiness, o r o n a ssignment f or t he purpose of furthering the Employer's business; and

2) performing the *Material and Substantial Duties* of *Your Regular Occupation* on a full-time basis.
CDID-1AB

**Activities of Daily Living** means:

1) Eating – Feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by a feeding tube or intravenously.

2) Toileting – Getting to and from the toilet, getting on and off the toilet and performing associated personal hygiene.

3) Transferring – Moving into or out of a bed, chair or wheelchair.

4) Bathing – Washing oneself by sponge bath in either a tub or shower, including the task of getting into or out of the tub or shower.

5) Dressing – Putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs.

6) Continence – Ability to maintain control of bowel and bladder function; or when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).
CDID-2AA

**Appropriate and Regular Care** means that *You* are regularly visiting a *Doctor* as frequently as medically required to meet *Your* basic health needs. The effect of the care should be of demonstrable medical value for *Your* disabling condition(s) to effectively attain and/or maintain *Maximum Medical Improvement*.
CDID-4AA

**Date of Disability** is the date *We* determine *Your Injury* or *Sickness* impairs *Your* ability to perform *Your Regular Occupation*.
CDID-5AA

**Disability** or **Disabled** means that *You* satisfy either the Occupation Qualifier or the Earnings Qualifier.
CDID-6AA

**Disability Earnings** is the wage or salary *You* earn from *Gainful Employment* after a *Disability* begins. It includes partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income *You* receive or are entitled to receive. It does not include Social Security, sick pay, salary continuance payments or any other *Disability* payment *You* receive as a result of *Your Disability*. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.
CDID-7AB

**Doctor** means a person legally licensed to practice medicine, psychiatry, psychology or psychotherapy, who is neither *You* nor a member of *Your* immediate family. A licensed medical practitioner is a *Doctor* if applicable state law requires t hat s uch p ractitioners b e r ecognized f or p urposes o f c ertification o f *D isability*, a nd t he t reatment provided by the practitioner is within the scope of his or her license.
CDID-8AA

**Elimination Period** means the number of calendar days at the beginning of a continuous period of *Disability* for which no benefits are payable. The *Elimination Period* is shown in the *Schedule of Benefits*.
CDID-9AA

**Gainful Employment** or **Gainfully Employed** means the performance of any occupation for wages, remuneration or profit, for which *You* are qualified by education, training or experience on a full-time or part-time basis, for the Employer or another employer, and which *We* approve and for which *We* reserve the right to modify approval in the future.
CDID-10AA

**Generally Accepted Medical Practice** or **Generally Accepted in the Practice of Medicine** means care and treatment which is consistent with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies.
CDID-11AA

**Gross LTD Monthly Benefit** means that benefit shown in the *Schedule of Benefits* which applies to *You*.
CDID-20AGross

**Hospital or Health Care Facility** is a legally operated, accredited facility licensed to provide full-time care and treatment for the condition(s) causing *Your Disability*. It is operated by a full-time staff of licensed physicians and registered nurses. It does not include facilities which primarily provide custodial, educational or rehabilitative care.
CDID-12AA

**Injury** means bodily injury caused by an accident which results, directly and independently of all other causes, in *Disability* which begins while *Your* coverage is in force.
CDID-13AA

**Insured Employee** means an employee whose insurance is in force under the terms of the policy.
CDID-14AA

**LTD** means Long Term Disability.
CDID-35AA

**Male pronoun**, whenever used, includes the female.
CDID-16AA

**Material and Substantial Duties** means the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered.
CDID-17AA

**Maximum Medical Improvement** is the level at which, based on reasonable medical probability, further material recovery from, or lasting improvement to, an *Injury* or *Sickness* can no longer be reasonably anticipated.
CDID-18AA

**Maximum Period Payable**, as shown in the *Schedule of Benefits*, means the longest period of time that *We* will make payments to *You* for any one period of *Disability*.
CDID-32AA

**Mental Disorder** means a disorder found in the current diagnostic standards manual of the American Psychiatric Association.
CDID-19AA

**Monthly Benefit** and **Maximum Period Payable** mean that benefit and those periods shown in the *Schedule of Benefits* which apply to *You*.
CDID-20AA

**Net LTD Monthly Benefit** means the *Gross Long Term Disability Monthly Benefit* less the Deductible Sources of Income.
CDID-20ANet

**Pre-existing Condition** means a condition for which medical treatment or advice was rendered, prescribed or recommended within 12 months prior to *Your* effective date of insurance. A condition shall no longer be considered pre-existing if it causes *Disability* which begins after *You* have been insured under the policy for a period of 24 months.
CDID-21BA

**Regular Occupation** means the occupation that *You* are performing for income or wages on *Your Date of Disability*. It is not limited to the specific position *You* held with *Your* employer.
CDID-22BA

**Retirement Plan** means a plan which provides retirement benefits to employees and is not funded wholly by employee contributions.
CDID-24AA

**Schedule of Benefits** means the schedule which is a part of this certificate.
CDID-28AA

**Sickness** means sickness or disease causing *Disability* which begins while *Your* coverage is in force.
CDID-26AA

**We, Our** and **Us** mean the Continental Casualty Company, Chicago, Illinois.
CDID-29AA

**You, Your** and **Yours** means the employee to whom this certificate is issued and whose insurance is in force under the terms of the policy.
CDID-30AA

## DISCRETIONARY AUTHORITY

The Policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable, by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto. The plan administrator and other plan fiduciaries have discretionary authority to determine *Your* eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated sole discretionary authority to Continental Casualty Company to determine *Your* eligibility for benefits and to interpret the terms and provisions of the Policy.

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 05-11830-NMG

| | |
|---|---|
| JOYCE CHRISTIE.<br>    Plaintiff | ) |
| | ) |
| | ) |
| V. | ) |
| | ) |
| HARTFORD LIFE GROUP INSURANCE<br>COMPANY | ) |
| | ) |

**JOYCE CHRISTIE'S RESPONSES TO
HARTFORD LIFE GROUP INSURANCE COMPANY'S
FIRST SET OF INTERROGATORIES TO PLAINTIFF**

**GENERAL OBJECTIONS**

The following general objections are applicable to, and are hereby incorporated by reference into each of the Plaintiff's Specific Responses to each Interrogatory contained in the Interrogatories:

1.     The Specific Responses set forth below and the information Plaintiff provides therein are based upon information now available to Plaintiff after having made reasonable efforts to ascertain information responsive to the specific Interrogatories contained in the Interrogatories.  Plaintiff may, in the future, identify or determine additional information responsive to the Interrogatories or relative to Plaintiff's responses to the specific Interrogatories contained in the Interrogatories.  Plaintiff objects to the Interrogatories to the extent they purport to demand information not in Plaintiff's possession, custody or control, or to require Plaintiff to undertake efforts to respond to the Interrogatories that are not reasonably calculated to ascertain

1

these answers and objections to the Interrogatories or any part thereof, or (iii) any information divulged in these answers and objections.

4.      To the extent that the interrogatories request the identification of documents in response to the interrogatories, Plaintiff agrees to make available for inspection and copying all non-privileged documents in its possession, custody or control responsive to these interrogatories at a time agreed upon by counsel.

## INTERROGATORIES

### INTERROGATORY NO. 1

Please identify yourself and identify each person who has assisted you in the preparation of your answers and/or provided you with information in connection with your answers to these interrogatories. For each person who has assisted you, state the particular interrogatory on which they assisted you and/or were a source of information.

### ANSWER

I had some assistance from Yves A. Isidor of Cambridge, Massachusetts. He helped me compile information. My attorney also assisted.

### INTERROGATORY NO. 2

With respect to your alleged disability, please state:

    a.   the dates for which you claim to be disabled;

    b.   the cause/diagnosis of the disability;

    c.   each and every symptom of your disability and how each respective symptom

3

has been verified or quantified using tests, procedures or clinical

examinations, and the inclusive dates of each and every symptom;

d.   each and every specific activity, including but not limited to, work activities,

from which you allege you are disabled and the inclusive dates of your alleged

disability from each and every activity identified.


**ANSWER**

OBJECTION. This interrogatory is overly broad, unduly burdensome and not reasonably

calculated to the lead to the discovery of admissible evidence.  Without waiving the objection,

plaintiff states:


a.     August 2002 to the present.

b.     The cause of my disability is due to the automobile accident occurred on April 12,

2001. I suffered from bulging and herniated discs on L4 and L5 and Lumbar

Sacral (LS) damage.

c.      Continuing unremitting pain that includes, constant burning across the spine,

shooting pains in the hips and buttocks. Sometimes the pain radiates on aYet,

non-intermittent but constant pain down my left leg and sometimes my right leg. I

also experience severe pain and burning at the Lumbar Sacral (LS) area, bottom

left of the spine. In addition the pain radiates into my left hip, accompanied by

sharp shooting pain in the center of the spine. The pain often wakes me from

sleep.

4

d.       Emerging (or getting up, by way of simplicity) from a chair, sitting even on a bed,

bending, standing, accessing and exiting an automobile, all always cause me to

experience severe pains. As I experience constant pain, it effects everything that I

do.

## INTERROGATORY NO. 3

Describe the details and duties of the work you performed for the Fall River Housing

Authority from January 2001 through August 2002, specifying which duties you performed

when, which duties you claim you were/are disabled from performing and the inclusive dates of

your alleged disability from each and every activity identified.

## ANSWER

OBJECTION. This interrogatory is overly broad, unduly burdensome and not reasonably

calculated to the lead to the discovery of admissible evidence.  Without waiving the objection,

plaintiff states:

In 2001, I worked in the capacity of assistant manager/floater at Fall River Housing

Authority. Prior to my April 12, 2001 automobile collision, I was often assigned to a large

number developments, even when Fall River Housing was not presented with a crisis.

My duties included: Picking up from and delivering office supplies; delivering mail;

delivering, door to door, all monthly (economic) rent bills; monthly inspection notices; serving

eviction notices; inspecting air conditioning units; showing apartments and all other attendant

duties required in the occupation description.

These duties required walking up and down stairs; carrying, bending, reaching. Lifting

5

Pursuant to 28 U.S.C., section 1746, I, verify under the penalty of perjury under the Laws of the

United States that the foregoing is true and correct.

Executed this _4th_ day of _March_ 2006.

Joyce Christie

AS TO OBJECTIONS:

Jonathan M. Feigenbaum, Esq.
B.B.O. #546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787
L:\LITG\Jchr001\resp.ints.wpd

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand) (mail) on 3/8/06

12

# Exhibit C

# CREVIER & RYAN, LLP

ATTORNEYS AT LAW

TOWER SQUARE
1500 MAIN STREET, SUITE 2020
SPRINGFIELD, MASSACHUSETTS  01115-5727

TELEPHONE (413) 787-2400

FAX (413) 781-8235

David B. Crevier *
Michael P. Ryan
Katherine R. Parsons ♦◊

\* Also admitted in NY
♦ Also admitted in RI
◊ Also admitted in CT

**VIA FACSIMILE
AND MAIL**

August 9, 2006

Jonathan M. Feigenbaum, Esq.
Phillips & Angley
One Bowdin Square
Boston, MA 02114

Re:    Joyce Christie v. Hartford Life Group Insurance Company,
       U.S. District Court, Civil Action No. 05-11830-NMG

Dear Jonathan:

As we had discussed earlier in this case, due to the fact that we are litigating the own occupation and the any occupation periods in this policy, we are going to have an IME of Joyce Christie.  You previously indicated that you would consider assenting to an IME depending on which doctor would be performing the IME.  We have identified a doctor to perform the IME - Dr. Walter Panis - Attending Physiatrist at Spaulding Rehabilitation Hospital and Medical Director of the Occupation Medicine Center at New England Baptist Hospital.

Please let me know by Monday, August 14 if you will agree to have Ms. Christie attend an IME with Dr. Panis.  If I do not hear from you or if you refuse to assent by August 14, I will file a motion with the Court to allow the same.

Thank you.

Very truly yours,

Katherine R. Parsons

cc:    Sandra Davis, Esq.

# Exhibit D

CURRICULUM VITAE

**DATE PREPARED:** July 18, 2006

**PART I: General Information**

**Name:**     WALTER PANIS

**Home Address:** 709 Heath Street
Chestnut Hill, MA 02467

**Office Address:** SPAULDING REHAB HOSPITAL
PM&R DEPT
125 NASHUA ST
BOSTON, MA 02114  United States
**Phone:**     (617) 573-2628
**Email:**     wpanis@partners.org
**Fax:**     (617) 573-2769
**Place of Birth:** Orange, New Jersey

**Education:**

| | |
|---|---|
| 1970 | B.A., U.Pennsylvania |
| 1972 | Candidature in Medicine, Catholic Univ. of Louvain (Belgium) |
| 1975 | M.D., TEMPLE U. SCHOOL OF MEDICINE |

**Postdoctoral Training:**

| | |
|---|---|
| 1975-1976 | Intern in Medicine, Carney Hospital, Boston MA |
| 1976-1979 | Resident in Neurology, Tufts New England Medical Center |
| 1979-1980 | Clinical Fellow in Neurology (Cerebral Vascular Disease), Tufts New England Medical Center |
| 1995-1997 | Resident in Physical Medicine and Rehabilitation, HMS/Spaulding Rehabilitation Hospital/MGH |

**Licensure and Certification:**

| | |
|---|---|
| 1975 | National Board of Medical Examiners |
| 1977 | Massachusetts Registered Physician |
| 1981 | Diplomate American Board of Psychiatry and Neurology |
| 1992 | American Society of Neurorehabilitation |
| 1998 | Diplomate of American Board of PM&R |

**Academic Appointments:**

| | |
|---|---|
| 1995-1996 | Instructor in Neurology, Neurology-Massachusetts General Hospital, Boston, MA |

1996-2004    Instructor in Physical Medicine and Rehabilitation, Physical Medicine and
Rehabilitation, Boston, MA

## Hospital or Affiliated Institution Appointments:

1980-1994    Director Stroke Rehabilitation (Tufts Division), Spaulding Rehabilitation Hospital
1980-1994    Assistant Director of Neurology, Spaulding Rehabilitation Hospital
1981-1997    Staff Neurologist, Carney Hospital, Boston MA, Boston, MA
1997-1999    Staff Physician/Consultant in Physical Medicine and Rehabilitation, Brigham and
Women's Hospital Dept. of Anesthesia Pain Service, Boston, MA
1997-1999    Staff Physician - Physiatry and Neurology, East Boston Neighborhood Health Center,
Boston, MA
1997-        Attending Physiatrist and Consulting Neurologist, Spaulding Rehabilitation Hospital,
Boston, ma
1999-        Medical Director Occupation Medicine Center, New England Baptist Hospital, Boston,
MA

## Hospital and Health Care Organization Clinical Service Responsibilities:

2000-2001    President of Professional Staff, Spaulding Rehabilitation Hospital

## Major Committee Assignments:

1981-1982    Physician Representative to Executive Committee, Member, Spaulding Rehabilitation
Hospital
1985-1988    Steering Committee of Medical Staff, Member, Spaulding Rehabilitation Hospital
1985-1994    Lab Committee, Member, Spaulding Rehabilitation Hospital
1986-1990    Peer Review Analysis, Member, Carney Hospital
1986-1990    Mass Pro Chart Review, Member, Carney Hospital
1986-1990    URC Consultant Neurology and Rehabilitation, Member, Carney Hospital
1986-1992    Residency Formation Committee, Member, Spaulding Rehabilitation Hospital
1990-1992    Ethics Committee, Member, Spaulding Rehabilitation Hospital
1990-1994    Home Health Advisory Committee, Member, Spaulding Rehabilitation Hospital
1990-1994    Stroke Advisory Committee, Chairperson, Spaulding Rehabilitation Hospital
1992-1994    Steering Committee of Medical Staff, Member, Spaulding Rehabilitation Hospital

## Professional Societies:

1979-        American Academy of Neurology, Member
1980-        Suffolk Medical Society, Member
1980-        Massachusetts Medical Society, Member
1980-        Boston Society for Neurology and Psychiatry, Member
1985-        N.E. Society of Physical Medicine and Rehabilitation, Member
1985-        American Society of Neurorehabilitation, Member
1986-        Massachusetts Neurologic Association, Member
1999-        New England Pain Association, Member

## Community Service Related to Professional Work:

1992-2000    Board of Directors, Wheelchair Sports and Recreation Association

**Part II: Research, Teaching, and Clinical Contributions**

**A. Narrative report of Research, Teaching, and Clinical Contributions**

I have been a clinical instructor for Tufts Medical Students in the Physical Diagnosis
Course conducted at Spaulding.

PM&R residents have rotated through my service at Spaulding and through the Occupation Medicine
Center at the NEBH

Numerous lectures have been given in the didactic program of the residency at HMS-SRH PM&R
program

**D. Report of Teaching**

**1. Local contributions**

    **a. Medical School Courses**

| 2005- | Patient Doctor 1 | | contact time | prep time |
|---|---|---|---|---|
| | Preceptor | 6 Medical Students | 3 hours/year for 1 year(s) | 1 hours/year for 1 year(s) |

**Part III: Bibliography**

**Original Articles**

1. Hodgman MT, Pessin MS, Homans DC, Panis W, Prager RJ, Lathi ES, Criscitiello MG. Cerebral embolism as the initial manifestation of peripartum cardiomyopathy. Neurology. 1982;34(4):475-479.
2. Sweet EW, Panis W, Levine DN. Crossed Wernicke's asphasia. Neurology. 1982;32(6):668-671.
3. Pessin MS, Panis W, Prager RJ, Millan VG, Scott RM. Auscultation of cervical and ocular bruits in extracranial carotid occlusive disease: a clinical and angiographic study. Stroker. 1983;14(2):246-249.
4. Shah, M, Panis, W . Charcot Arthropathy. eMedicine Specialties(online). 2004.

**Reviews/Chapters/Editorials**

1. Panis W. Rehabilitation of Stroke Disease. Med. Stroke Therapy.
2. Panis W, Aronoff G. Painful Peripheral Neuropathies. In: Evaluation and Treatment of Chronic Pain. Baltimore: Williams & Wilkins;1992. p. 67-72.
3. Walter Panis, MD Walter R. Frontera, MD, PhD Julie K. Silver, MD. Repetitive Strain Injuries. In: Essentials of Physical Medicine and Rehabilitation. Philadelphia, PA: Hanley & Belfus, Inc;2002. p. 722-7225.
4. Walter R. Frontera, MD, PhD Julie K. Silver, MD. Repetitive Strain Injuries. In: Essentials of Physical Medicine and Rehabilitation. Philadelphia, PA: Hanley & Belfus, Inc;2002. p. 722-7225.

**Educational Materials**

1. Gresham, Glenn. Post Stroke Rehabilitation Clinical Guideline #16 AHCPR Publication # 95-0062. 1995.

# Exhibit E

## PHILLIPS & ANGLEY

ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(617) 367-8787

JEFFREY J. PHILLIPS, P.C.
JEFFREY T. ANGLEY, P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
STEPHANIE M. SWINFORD
KRISTEN M. PLOETZ

*ALSO ADMITTED IN DC AND CA

TELECOPIER (617) 227-8992

August 14, 2006
**BY FAX ONLY - 413-781-8235**

Attorney Katherine R. Parsons
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5532

Re: <u>Christie v. Hartford Life Group Insurance Company</u>
Docket No. 05-11830-NMG

Dear Kate:

In response to your letter dated August 9, 2006, Ms. Christie will not assent to a defense medical examination by Dr. Walter Panis, M.D. I am aware of Dr. Panis' retention by a number of insurance carriers. If you have the name of a medical doctor who will provide a truly independent examination, Ms. Christie will reconsider the request of The Hartford.

Thank you for your courtesy and cooperation with this matter.

Very truly yours,

Jonathan M. Feigenbaum

JMF/rtr
cc:   Joyce Christie
L:\LITG\Jchr001\parsons.L.08.14.06.wpd

# Exhibit F

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOYCE CHRISTIE<br>　　　　　Plaintiff,<br><br>v.<br><br>HARTFORD LIFE GROUP INSURANCE<br>COMPANY f/k/a CNA GROUP<br>LIFE ASSURANCE COMPANY<br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-11830 NMG

## ORDER

For the reasons set forth in Defendant's Motion for an Examination of Plaintiff filed herewith, this Court hereby orders that:

1.　　Defendant's Motion for an Examination of Plaintiff is ALLOWED.

2.　　Plaintiff shall appear at 10:00am on September 15, 2006 at the offices of Walter Panis, M.D., Spaulding Rehabilitation Hospital, PM&R Department, 125 Nashua Street, Boston, Massachusetts 02114 for an examination.

3.　　Plaintiff's attorney may not be present for the examination.

4.　　The examination shall consist of a physical examination together with such tests as Dr. Panis may deem medically appropriate to permit him to reach a reasoned conclusion regarding the exact nature and extent of her alleged disability, restrictions, functionality, and work capacity.

**IT IS SO ORDERED.**

_____
United States District Judge